**Marie E. Stephan v. Joseph B. Lynch**

[388 A.2d 376]

No. 208-77

Present: **Barney, C.J., Daley, Larrow, Billings and Hill, JJ.**

Opinion Filed June 6, 1978

*John J. Zawistoski* and *Allan R. Keyes* of *Ryan, Smith & Carbine, Ltd.,* Rutland, for Plaintiff.

*Stephen L. Klein,* Rutland, for Defendant.

**Barney, C.J.** This is a dispute between a mother and her son, her only child. It was her claim below that he took advantage of her generosity in purchasing a home with her own assets and putting it in their joint names, by driving her out of it and taking possession of the premises. The lower court found in her favor, and the matter is on appeal here by the son.

The situation is best understood by examining the family history as reported in the findings. The plaintiff is twice a widow, and the defendant son is the child of her first marriage. Both parties lived in New Jersey in the sixties. In 1964 the plaintiff purchased, from funds entirely her own, a house in Plainfield, New Jersey. Her son was then married and had his own home. In 1966 the defendant persuaded his mother to put her home in their joint names to avoid having to go through the probate procedure in the event of death. Her bank accounts, although also entirely her own funds, were similarly joint. Sometime in the early 1970's the defendant and his then wife were divorced. The defendant got custody of his four children and, through purchase, became sole owner of his home. A few years later he was offered a transfer to the Rutland office of his employer. He advised his mother that he would have to reject the transfer unless one of the houses was sold.

As a result plaintiff sold her home and advanced her son moving expenses to come to Vermont in 1974. A home was purchased in Vermont from money belonging to the plaintiff and placed in their joint names, with the same understanding that it was for probate purposes, with no present interest or control in the defendant until her decease. Her bank accounts were transferred as joint accounts to Rutland banks on the same basis. There was a mortgage on the new home, and

plaintiff has seen to most of those payments as well as the tax obligations. The defendant has not made any deposits in the bank accounts at any material time.

A year later, in 1975, the defendant brought a young woman and her small child to live with him in the house. The plaintiff objected strenuously and the defendant first agreed to move, then refused. He and the girl are now married and have a child of their own.

The defendant took the position that he had an equal interest in her assets, including the house and bank accounts. The household, now consisting of three adults and six children, became a place of controversy. Because of the threats, ridicule and harassment, the plaintiff became fearful and distressed. Finally, on advice of her physician, the plaintiff moved to Christ the King Convent in Rutland. The trial court found this to be an involuntary ouster from her home.

The defendant told her to move her personal effects and furniture from the house, which she did at her own expense. She has now removed her son's name from the bank accounts. This removal was the basis of a pleading advanced as a counterclaim in the nature of set-off seeking recovery of half of the money represented by the accounts.

In deciding in favor of the plaintiff and awarding damages, the trial court took into account money paid by the defendant for certain insurance premiums, taxes, plumbing repairs, closing costs and mortgage payments. The plaintiff was awarded the house, with an option in the defendant to buy the same for a sum certain. That option has now, by its terms, expired. The plaintiff was awarded compensatory damages for an assault on her by the defendant, reimbursement for money advanced to or spent on behalf of the defendant, rental expenses for the time of her absence from the home, and clear title to the bank accounts.

The defendant, as appellant, challenges the propriety of the trial court's judgment order on five grounds. The first seeks judgment on the counterclaim based on a claimed failure to respond in the pleadings. There is no doubt but that allegations in a counterclaim well pleaded may be taken as admitted if no answer is filed. The defendant is confronted with two obstacles to the result he seeks. First, the

rule whose benefits he seeks, V.R.C.P. 12(a), requiring an answer within 20 days after service, relates to a counterclaim in the answer. The answer filed contained no counterclaim. More to the point is the fact that the pleadings in this case began with a complaint in August of 1975 and closed, after some seventeen pleadings, with the filing of an answer on July 21, 1976, and an amended answer on July 29, 1976. The first answer had been filed pro se by the defendant in September of 1975, and the counterclaim in question came along in April, 1976. Furthermore, the issue of default raised here was never presented below, and the case went to hearing on all substantive issues. The default was not preserved for review.

The next two grounds may be treated together. Both are claims that seek to establish title in the defendant to a share of the joint savings accounts and the real property entirely based on the fact of joint ownership. The claim makes no pretense of being based on any equities but is asserted to rest on the legal effect of the state of the title.

There is more to it than that. First, it must be kept in mind that this litigation is concerned with the original parties to these transactions. There are no intervening third party equities, nor has the situation been altered by the death of either of them. Second, and perhaps more important, in the case of both the savings accounts and the real estate, we are dealing with transactions that could create the interests claimed by the defendant by being accomplished gifts. This being the case, the strength of the defendant's interest will be determined by existence of those circumstances that support a valid inter vivos gift.

It is here his case fails. Both the findings and the underlying evidence contradict the presence of the essentials of a transfer of title by way of gift. Not only is it clear from the evidence that the plaintiff had no intention to make an inter vivos gift of any of this property to the defendant, but also that the defendant was not only well aware of it but stated that he concurred in it at the time. The demonstration of the intent to make such a gift was essential to defendant's position. The evidence did not support it, indeed it did not even have the element of delivery of the bank books that was still insufficient in *Little* v. *Little*, 124 Vt. 178, 185–86, 200 A.2d

276 (1964). The evidence affirmatively demonstrated that the plaintiff had no intention of relinquishing that control so crucial to an effective gift. *Tucker* v. *Merchants Bank,* 135 Vt. 597, 382 A.2d 212 (1977). The ruling of the lower court confirming ownership in the plaintiff was sound in law and entirely supported by the facts. *Tyree* v. *Ortiz,* 127 Vt. 177, 185, 243 A.2d 774 (1968).

The court went on to try to make the plaintiff whole for the financial costs and physical harm to which she was subjected in account of the defendant's wrongful actions in conjunction with his assertion of nonexistent titular rights in the property. The defendant challenges these assessments as some sort of unauthorized accounting for rents and profits between cotenants. It is clear from the record that they have no relation to that doctrine. His position is not well taken. The proof established both justification for compensatory damages and the existence of indebtedness. The judgment reflected these elements of recovery, and disposed of the issues raised by the pleadings and proof as to the situation of the parties with respect to the transactions with which this litigation is concerned. In that sense there is an accounting of sorts involved, and it was properly resolved under the evidence. There is a strong policy in the law to reach for full disposition of relief of issues between parties arising out of a given transaction. Cf. V.R.C.P. 13; *Brown* v. *Derway,* 109 Vt. 37, 43, 192 A. 16 (1937).

As the final issue the defendant complains that he should have prevailed on the issue of comparative negligence with respect to the damages awarded the plaintiff for the harm resulting from the defendant's assaultive behavior. The short answer is that negligence is not involved. The damages were assessed based on deliberate, not negligent, acts, and comparative negligence does not apply. There is no error.

*The option provision of the judgment having become inoperative by expiration of time, it is stricken; in all other particulars the judgment is affirmed.*