927 A.2d 773 (2007)
2007 VT 32
Joyce J. BROUSSEAU
v.
Heidi D. BROUSSEAU.
No. 2006-142.
Supreme Court of Vermont.
May 29, 2007.
*774 Present: REIBER, C.J., JOHNSON, SKOGLUND, and BURGESS, Associate Justices.

ENTRY ORDER
¶ 1. Mother appeals a superior court decision granting daughter summary judgment and thereby entitling her to one-half of the proceeds from the sale of mother's property as joint tenant. We reverse the summary judgment order and remand for further proceedings.
¶ 2. Mother acquired her interest in the property at issue in 1965 when it was deeded to mother, mother's mother, and mother's father as joint tenants with rights of survivorship. Mother's parents purchased the property for their own use, but included mother as a joint tenant on the deed solely for estate planning purposes  to avoid probate upon their deaths. In 1980, mother moved to the property to care for her elderly parents. Mother's father died in September of 1983. In March 1984, while mother's mother was still alive, mother signed a deed purporting to convey title to the property to herself and daughter as joint tenants with rights of survivorship. Mother claims that it was not intended as a gift, and that both parties understood that the deed was an estate planning tool. Mother's mother died three months after the 1984 deed was signed.
¶ 3. Mother currently lives at an assisted-living facility. In 2005, mother decided to sell the property to help her meet the monthly expenses for the facility. Daughter allegedly refused to quitclaim her interest *775 in the property to mother or to permit mother to receive the entire proceeds from the sale of the property. Prospective buyers of the property later informed mother of a title defect in the 1984 deed; it did not include mother's mother who was still living at the time the deed was executed. Mother then petitioned the probate court to adjudge her interest in the property, and in December 2005, the court determined that mother "possessed . . . an existing enforceable title" and had the right to convey the property free of any claims.
¶ 4. In November 2005, mother petitioned the superior court to: (1) declare that mother is the sole legal and equitable owner of the property; (2) order daughter to comply with the sale of the property; (3) declare that mother is entitled to all proceeds from the sale of the property; and (4) enjoin daughter from making any claims against the proceeds of the sale. Daughter filed a motion for summary judgment. The superior court granted the motion, concluding that mother's "voluntary act in titling the property in both her and her daughter's names, as joint tenants with rights of survivorship" conclusively demonstrated her intent to make an inter vivos gift of a one-half interest in the property. This appeal followed.
¶ 5. We review a grant of summary judgment using the same standard as the trial court. Mellin v. Flood Brook Union Sch. Dist., 173 Vt. 202, 211, 790 A.2d 408, 417 (2001). "[S]ummary judgment is appropriate only when the record clearly shows that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Bacon v. Lascelles, 165 Vt. 214, 218, 678 A.2d 902, 905 (1996). In determining whether any genuine issue of material fact exists, we give the nonmoving party the benefit of all reasonable doubts and inferences. Mellin, 173 Vt. at 211, 790 A.2d at 417.
¶ 6. In Vermont, there are two essential elements of an inter vivos gift: (1) donative intent and (2) delivery. Tyree v. Ortiz, 127 Vt. 177, 184-85, 243 A.2d 774, 778-79 (1968). Any interest in the property claimed by daughter in this case was created by mother's act of gifting it to her, and therefore, the strength of mother's and daughter's respective interests in the property must be determined by an analysis of the facts supporting the establishment of these two elements. See Stephan v. Lynch, 136 Vt. 226, 229, 388 A.2d 376, 378 (1978) (finding that son failed to prove inter vivos gift despite title in joint tenancy); see also In re Schlacter's Will, 34 A.D.2d 1093, 312 N.Y.S.2d 851 (1970) (applying law of inter vivos gifts where mother conveyed one-half interest in property to son).
¶ 7. In defining donative intent in this context, courts have traditionally taken one of two approaches. The first approach treats donative intent as the intent to transfer legal title, established by the mere act of placing property into joint title without receiving consideration in return. 1 B. Turner, Equitable Distribution of Property § 5:44, at 483-85, 488-89 (3d ed.2006) (discussing the "legal title approach" to donative intent and collecting cases from jurisdictions following this approach). The second approach, and the one favored by this Court, construes donative intent as the intent to confer immediate, beneficial ownership in the property at issue such that the mere joint titling of property without consideration does not conclusively establish intent to gift the property. Id. (discussing "beneficial interest approach" to donative intent and collecting cases from jurisdictions following this approach); see also, e.g., Stephan, 136 Vt. at 229-30, 388 A.2d at 378 (finding no *776 donative intent where mother added son to deed as joint tenant for estate planning purposes only); Mizzi v. Mizzi, 2005 VT 120, ¶ 6, 179 Vt. 555, 889 A.2d 753 (mem.) (holding that properties jointly titled in wife's name were not marital property where wife's mother placed her name on the deeds only to avoid probate and retained "full authority to maintain, sell, lease or otherwise dispose of the properties as she saw fit"). The presence or absence of donative intent is ultimately an issue to be determined by the trier of fact. Wills v. Whitlock, 139 S.W.3d 643, 654 (Mo.Ct.App.2004).
¶ 8. Here, by granting summary judgment for daughter, the trial court ignored mother's attestation that she did not intend to convey a present beneficial interest to daughter by signing the 1984 deed, and that daughter was aware that the property was titled to her as joint tenant in an effort to avoid probate if mother still owned the house at the time of her death.[1] The court relied on Foucher v. First Vermont Bank & Trust Co., a federal district court case, to determine that the mere act of titling the property in daughter's name as a joint tenant was legally sufficient to establish the intent and delivery required for an inter vivos gift. 821 F.Supp. 916, 923 (D.Vt.1993). In Foucher, the court held that "intent to create a present interest in the donee" can be presumed where the grantor "titl[es] the [property] in both names as joint tenants with right of survivorship." Id. It went on to state that "the law presumes acceptance when a gift is unaccompanied by any condition," thereby fulfilling the element of delivery. Id. Here, by deciding that daughter was entitled to judgment as a matter of law, despite mother's repeated claims on the record that she did not intend to make a present gift of the property to daughter, the trial court effectively created a conclusive presumption that title alone establishes an inter vivos gift. We disagree with the trial court's position given our precedent on the issue.
¶ 9. The trial court was mistaken in its reliance on Foucher, whose facts are easily distinguished from the present case. In Foucher, a father and daughter jointly owned several investment accounts. Id. at 920. Before his death, the father fraudulently transferred the funds into a bank account solely in his name by forging his daughter's signature. Id. at 920-22. After the father's death, the daughter sued the bank for wrongful conversion of her assets held in joint tenancy. Id. at 919. In its defense, the bank  a third party to the joint tenancy  argued that the father had contributed the funds used to purchase the joint assets and that the daughter could not prove that her father manifested an intent to grant her a present interest. Id. at 923. Because the father was deceased and could not speak to his intent to gift the property, the court looked to the only evidence it had to determine his intent  the voluntary act of titling the accounts jointly in his daughter's name. See id.
¶ 10. Here, in contrast, the dispute involves only the original parties to the joint tenancy, both of whom are still alive. Thus, our decision in Stephan is directly on point. In Stephan, a son convinced his mother to put her home in their joint *777 names to avoid having to go through probate court in the event of her death. 136 Vt. at 227, 388 A.2d at 377. The son later moved into the home with his family, claiming that he had an equal interest in the property on the basis of his joint ownership. Id. We held that the law of inter vivos gifts applied and found that the son had no present interest in the home because his mother did not intend to gift the property to him and he was well aware of it. Id. at 230, 388 A.2d at 378. We pointed out then, as now, that the case involved "no intervening third party equities, nor ha[d] the situation been altered by the death of either of" the parties  unlike many cases in which courts make inter vivos gift determinations involving real property. Id. at 229, 388 A.2d at 378.
¶ 11. The facts of this case are strikingly similar to those in Stephan. Here, mother claimed in her affidavit that she "did not intend to gift [her] home" to daughter by titling it in their joint names and that daughter at all times "understood that the house was always [mother's] and [mother] could do anything [she] wanted with [the] home." While daughter contested this allegation in her answer with a one-word denial, she filed no affidavit in support of her version of the facts, and therefore, the only facts on the record regarding mother's intent when deeding the property were those provided by mother's pleadings. Considering our precedent in Stephan, and giving mother the benefit of all reasonable doubts and inferences, we cannot say that there is "no genuine issue of material fact" or that judgment in favor of daughter is required as a matter of law.
¶ 12. Our holding today does nothing to undermine the general presumption that the act of titling property in another's name establishes intent to convey a present interest in the property. Phillips v. Plastridge, 107 Vt. 267, 269-70, 179 A. 157, 158 (1935) (voluntary act of titling creates inference of donative intent and delivery); In re Estate of Adams, 155 Vt. 517, 521, 587 A.2d 958, 961 (1990) (decedent's act of establishing accounts as absolute joint accounts created presumption of intent to so establish them). In this limited situation, however, where the grantor contends that it was not her intention to gift the property by titling it in joint tenancy, summary judgment is inappropriate and the trial court must consider the grantor's rebuttal evidence on the issue of intent. See Wills. 139 S.W.3d at 653-54 (summary judgment not appropriate where there was ample evidence that conveyance of property was not intended as inter vivos gift); see also Cole v. Cole, 53 Ark.App. 140, 920 S.W.2d 32, 35 (1996) (joint title gift presumption rebutted by evidence that wife put separate property into joint title so husband would get property upon her death); Myers v. Weems, 128 Or.App. 444, 876 P.2d 861, 864 (1994) (mother's testimony that "she did not intend to give defendant a present interest in the property at the time that the deed was executed and recorded" rebutted the presumption that the property transfer was a gift). Whether that evidence is credible will ultimately be determined by the court.
¶ 13. Because we find that the trial court erred in granting summary judgment to daughter, we do not reach the issue of daughter's precise interest in the property  if any  given the title defect at the time of the 1984 deed. Rather, we reverse and remand so that the trial court may decide these issues after consideration of the evidence presented by the parties.
Reversed and remanded for further proceedings consistent with this opinion.
DOOLEY, J., dissenting.
¶ 14. Although the majority's response to mother's claim to the value of the property *778 in order to pay for assisted living is understandable, the undesirable precedent it establishes is far too high a price to pay for the result. Contrary to the majority's assertion, its reasoning and result are not controlled by an earlier decision of this Court. Accordingly, I dissent.
¶ 15. Mother asks us to hold that otherwise valid record title to real estate is subject to a grantor's unexpressed intent to avoid the consequences of transferring property later by purporting to transfer it now. In endorsing this result, the majority subverts record title to post-hoc, self-serving testimony of intent. It also gives the desire to "avoid probate" a special status that allows a property owner to create a fictitious record title interest, revocable whenever the property owner desires for any reason or no reason.
¶ 16. The linchpin of the majority's rationale is that a conveyance made in contemplation of "estate planning"  specifically a desire to "avoid probate"  does not show donative intent and in fact rebuts the legal presumption in favor of a gift. This is a bad rule, and one we should categorically reject. We should instead follow the substantial authority from other jurisdictions that evidence that a record transfer of real property was intended to become effective only on the death of the transferor, in order to avoid probate, fails to rebut the presumption that the gift of the property was complete on passing and recording the deed. In the absence of any truly material evidence that the joint tenancy in this case was not a gift, I would affirm summary judgment.
¶ 17. The precise question before us is this: has mother set forth sufficient evidence to rebut the presumption that the 1984 deed was a gift to survive summary judgment?[2] The majority aptly recites *779 our gift-presumption where property is titled jointly. See ante, ¶ 12; Phillips v. Plastridge, 107 Vt. 267, 269-70, 179 A. 157, 158 (1935); In re Estate of Adams, 155 Vt. 517, 521, 587 A.2d 958, 961 (1990). We have explained that "the lack of words of survivorship denies to a claim of gift the support their presence would give to a donative intent." Tucker v. Merchants Bank, 135 Vt. 597, 600-01, 382 A.2d 212, 214 (1977) (overruled on other grounds in Adams, 155 Vt. at 521 n. 1, 587 A.2d at 961 n. 1). Thus, terms of survivorship  like those in the 1984 deed  are indicative of donative intent. Additionally, the general presumption that one intends the natural consequences of one's acts applies to the creation of joint tenancies such that an intent to create a present interest in the donee is presumed. Adams, 155 Vt. at 521, 587 A.2d at 961 ("It is generally presumed that one intends the natural consequences of one's acts. Since decedent established the accounts as absolute joint accounts, presumably she intended to so establish them.") (internal citation omitted); Foucher v. First Vt. Bank & Trust Co., 821 F.Supp. 916, 923 (D.Vt.1993).
¶ 18. Furthermore, the presumption of gifts for transfers between parents and their children, including adult children, is well established. See Phillips, 107 Vt. at 270, 179 A. at 158 (describing presumption of acceptance of gifts between parents and children); see also Moore v. Moore, 9 Ill.2d 556, 138 N.E.2d 562, 564 (1956) (applying presumption of gifts to parents and adult children); Boatright v. Perkins, 894 P.2d 1091, 1094 (Okla.1995) (articulating rebuttable presumption of gift between parent and child where parent pays purchase price and legal title is conveyed to child); Hayne Federal Credit Union v. Bailey, 327 S.C. 242, 489 S.E.2d 472, 476 (1997) (applying presumption to adult children). It is equally well established that, to rebut the presumption of parent-child gifts, the challenger must prove the lack of donative intent by clear and convincing evidence. See, e.g., Hooks v. Hooks, 258 Ala. 427, 63 So.2d 348, 350 (1953); Judgment Servs. Corp. v. Sullivan, 321 Ill. App.3d 151, 254 Ill.Dec. 70, 746 N.E.2d 827, 831 (2001); Prange v. Prange, 755 S.W.2d 581, 593 (Mo.Ct.App.1987); Kyles v. Kyles, 832 S.W.2d 194, 197 (Tex.Ct.App. 1992).
¶ 19. The majority, however, concludes that mother's stated intent of avoiding probate sufficiently rebuts the gift presumption to create a genuine issue of material fact. Numerous decisions have held to the contrary, and I would follow them. Courts have held that a stated intent of financial planning, including the avoidance of probate, does not rebut the presumption that jointly titled property is intended as a gift. See Bartlett v. Bartlett, 2006 OK CIV APP 112, ¶¶ 20-21, 144 P.3d 173 (noting that "[t]he weight of authority from other jurisdictions supports [the] view" that creation of a joint tenancy for purposes of estate planning does not rebut the presumption of a gift). See In re Marriage of Moncrief, 36 Colo.App. 140, 535 P.2d 1137, 1138 (1975) ("The parties' explanation that the title was placed in joint tenancy so as to avoid inheritance taxes does not overcome *780 the presumption that a gift occurred; it merely expresses a reason why the gift was made."); In re Marriage of Smith, 265 Ill.App.3d 249, 202 Ill.Dec. 738, 638 N.E.2d 384, 389 (1994) (holding that intent to avoid probate does not rebut joint title gift presumption); Stevenson v. Stevenson, 612 A.2d 852, 855, 855 n. 5 (Me.1992) (affirming conclusion that joint titling of property was gift where stated intent was estate planning); McLean v. McLean, 323 N.C. 543, 374 S.E.2d 376, 381, 381 n. 3 (1988) (affirming finding that presumption of gift was not rebutted by joint titling of property for purpose of estate tax, citing Moncrief); L. Morgan & E. Synder, When Title Matters: Transmutation and the Joint Title Gift Presumption, 18 J. Am. Acad. Matrimonial Law 335, 352 (2003) ("The most commonly stated reason to negate donative intent is that the conveyance into joint title was made for estate planning purposes, to avoid probate taxes. In many states, this reason has been held simply insufficient, because the party actually intended to transfer legal title."). In direct opposition to the majority's holding, numerous courts have held that a stated intent of estate planning is in fact affirmative evidence of donative intent. Bartlett, 2006 OK CIV APP 112, ¶ 21 n. 18, 144 P.3d 173 (collecting cases across jurisdictions).
¶ 20. I recognize that the most common precedents are divorce cases because the question of donative intent most commonly arises in this context. This is a distinction without difference, however, because the factual and legal significance of a stated intent of estate planning does not, and should not, vary depending on the familial relationship of the parties. Courts have equated the presumption of gifts between spouses to the presumption of gifts between parents and children, noting that, in both instances, the grantee is a "natural object of the [grantor's] bounty." Sullivan, 254 Ill.Dec. 70, 746 N.E.2d at 831; see also Hooks, 63 So.2d at 350 (equating two presumptions); Clary v. Fleming, 60 Mont. 246, 198 P. 546, 547 (1921) (same); Bailey, 489 S.E.2d at 475-76 (same).
¶ 21. I also recognize that there is a split of authority on the issue of whether estate planning considerations can rebut the joint title gift presumption. See 1 B. Turner, Equitable Distribution of Property § 5:44, at 488-89 (3d ed.2006) (collecting cases). Contrary to the majority's assertion that one side of this issue is "favored by this Court," ante, ¶ 7, however, this treatise does not place Vermont on either side of the debate. Id. It thus supports the notion that this is an open question in our state that we can decide based on the relevant policy considerations. Retention of the gift presumption for joint tenancies where the grantor's stated intent is one of estate planning is consistent with the fundamental purpose of record title  to simplify and make transparent the ownership of land. See Carpenter v. Hollister, 13 Vt. 552, 557 (1841) (characterizing as "dangerous" the contradiction of record title by parol evidence). I would hold, therefore, that the better policy is to presume in favor of title as evidenced by the deed, and not allow recorded titles to be undercut by self-serving testimony of contrary intent. We should recognize that creating fictitious ownership of land, revokable at will, is not legitimate estate planning, but is evasion of probate rules intended to protect beneficiaries, creditors, and the public fisc. We should not countenance such evasion.
¶ 22. To buttress its notion that a grantor's subjective intent can defeat record title and the joint title gift presumption, the majority relies almost entirely on Stephan v. Lynch, 136 Vt. 226, 388 A.2d 376 (1978). In Stephan, the issue as framed by the Court was whether the defendant son "took advantage of [his *781 mother's] generosity in purchasing a home with her own assets and putting it in their joint names, by driving her out of it and taking possession of the premises." Id. at 227, 388 A.2d at 377. The Court recited findings that the defendant had "persuaded his mother to put her home in their joint names to avoid having to go through the probate procedure in the event of death." Id. The Court described later "threats, ridicule and harassment" by the son towards his mother which caused her, at the advice of her doctor, to leave the house. Id. at 228, 388 A.2d at 377-78. Ultimately, the Court found it "clear from the evidence that the plaintiff [mother] had no intention to make an inter vivos gift" to her son and "that the defendant was not only well aware of [this] but stated that he concurred in it at the time." Id. at 229, 388 A.2d at 378.
¶ 23. Viewed in its entirety, the underlying concern in Stephan was one of undue influence and "taking advantage" of a mother's generosity towards her only son. That undue influence or duress can rebut donative intent is, of course, well established. Landmark Trust (USA), Inc. v. Goodhue, 172 Vt. 515, 525, 782 A.2d 1219, 1228 (2001) (collecting cases). Stephan was not, however, a direct examination of the gift presumption in the context of jointly titled real property, as the majority would have it. Indeed, the case is devoid of any such analysis. Here, unlike Stephan, there is no evidence of persuasion on the part of daughter in the creation of the joint tenancy. In fact, there is no evidence of her active participation in the conveyance at all. Stephan does not control.[3]
¶ 24. Finally, the dismissal of mother's claim at this procedural stage for her failure to overcome the gift presumption would be an ordinary application of summary judgment. We routinely require nonmoving parties to overcome legal presumptions to survive summary judgment. See, e.g., Earle v. State, 2006 VT 92, ¶ 23, 180 Vt. 284, 910 A.2d 841 (affirming summary judgment where nonmoving plaintiff failed to rebut presumption in favor of discretionary function exemption); Robertson v. Mylan Laboratories, Inc., 2004 VT 15, ¶ 34, 176 Vt. 356, 848 A.2d 310 (affirming summary judgment where nonmoving plaintiff failed to meet pretext prong of McDonnell Douglas burden shifting standard); Such practice is consistent with our general rule that where a moving party does not bear the burden of persuasion at trial  as is the case here  it may satisfy its summary judgment burden by showing that there is an absence of evidence to support the nonmoving party's case. Boulton v. CLD Consulting Eng'rs, Inc., 2003 VT 72, ¶ 5, 175 Vt. 413, 834 A.2d 37 (citing Ross v. Times Mirror, Inc., 164 Vt. 13, 18, 665 A.2d 580, 583 (1995)). The burden is then on the nonmoving party to persuade the court of a triable issue of fact. Id.
¶ 25. Here, to support its reversal of summary judgment, the majority emphasizes that daughter did nothing more than deny mother's claim that the property was intended as a gift. Ante, ¶ 11. In fact, this is all daughter's summary judgment burden requires. The burden is on mother to rebut the presumption of donative intent that accompanies the voluntary joint-titling of property. See Adams, 155 Vt. at 521, 587 A.2d at 961 ("It is generally presumed that one intends the natural consequences of one's acts."). I agree with other courts that have addressed this issue that "estate planning" merely states the *782 purpose for the gift; it does not rebut the joint title gift presumption. Where mother presented nothing more than her unilateral intent to avoid probate to defeat a presumed gift, I would affirm summary judgment for daughter.
NOTES
[1] There are several legal mechanisms that are typically used by property holders in estate planning to avoid the inconvenience of probate proceedings. One such mechanism is joint tenancy, which results in the automatic transfer of property upon death by operation of law. Another commonly used tool is the revocable trust, which was equally available to mother to legally effectuate her stated desire of avoiding probate in the event that she retained title to the property at the time of her death.
[2] I say this is the question before us because the majority does not address the issue raised by the mother's lack of full title when she granted the joint tenancy to daughter. At the time of the conveyance, mother shared the property in joint tenancy with her own mother. Mother's conveyance by warranty deed in 1984, therefore, would seem subject to mother's mother's one-half interest, leaving daughter with no more than a quarter interest. See State v. Thomas, 131 Vt. 228, 233, 303 A.2d 465, 467 (1973) ("In a joint tenancy each is said to have seisin of the whole but has title only to his aliquot part.") (quotation and citation omitted). Mother's mother, however, died shortly after the 1984 conveyance. Regardless of whether her interest passed to mother by right of survivorship or by will, mother subsequently obtained a decree of the probate court granting her the right to convey the property free of any claim by her mother or her mother's estate. Mother's claim that daughter now only holds a quarter interest in the property, therefore, is defeated by the doctrine of after-acquired title. This doctrine requires the following sequence: first, "a putative conveyor represents in a deed to a putative conveyee that the conveyor has title to property," second, "the putative conveyor in fact has no title, or at least has less than he represents," and finally, "the putative conveyor later acquires some or all of the title he represented he had." 14 R. Powell on Real Property § 84.02[1], at 84-32 (M. Wolf ed.2007). Ultimately, "[i]f all three events occur, the putative conveyor's newly acquired title passes instantaneously to the conveyee." Id. Thus, although a grantee does not receive what he or she expects when the deed is delivered, later events can pass title to that grantee. Id.

The doctrine of after-acquired title has long been recognized in Vermont, summarized concisely by the bankruptcy court: "Under Vermont law, a warranty deed conveys the grantor's after-acquired title to the grantee 'by operation of law, in discharge of the covenants of the deed.'" In re Gorman, 82 B.R. 253, 257 n. 4 (D.Vt.1987) (quoting Cross v. Martin, 46 Vt. 14, 18 (1873)); see also Blake v. Tucker, 12 Vt. 39, 44 (1840) ("The general rule, that, where one conveys land, with general covenant of warranty of title to the grantee, his heirs and assigns, all title subsequently acquired by the grantor will enure for the benefit of the grantee, is well established.") (citing Middlebury College v. Cheney, 1 Vt. 336 (1828)) (other citations omitted). The purpose of the doctrine is to protect the grantee, as well as to effectuate the intent of the parties as manifested by the deed. Blake, 12 Vt. at 44 (rule that subsequently acquired title enures to benefit of grantee "prevent[s] circuity of action, and carr[ies] into effect the manifest intention of the parties"); Middlebury College, 1 Vt. at 349 (same).
Here, by decree of the probate court or otherwise, mother subsequently obtained the title she purported to convey in 1984. Mother's after-acquired title thereby enured to the benefit of daughter such that daughter has a one-half interest in the property consistent with the terms of the warranty deed.
[3] Nor does Mizzi v. Mizzi, 2005 VT 120, 179 Vt. 555, 889 A.2d 753 (mem.), control. In that case, the daughter testified that her mother did not have donative intent, so we were not dealing with a presumption. Id. ¶ 6. There is no such evidence here.