NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2021 VT 12

No. 2020-163

| | |
|---|---|
| In re Estate of Theodore N. George<br>(Deborah George, Appellant) | Supreme Court<br><br>On Appeal from<br>Superior Court, Windham Unit,<br>Civil Division<br><br>November Term, 2020 |

Robert P. Gerety, Jr., J.

Amanda T. Rundle of Rundle & Rundle, PLLC, Springfield, for Petitioner-Appellant.

Theodore C. Kramer of Kramer Law Office, Brattleboro, for Respondent-Appellee.

PRESENT: Reiber, C.J., Robinson, Eaton and Cohen, JJ., and Morris, Supr. J. (Ret.), Specially Assigned

¶ 1. **REIBER, C.J.** Daughter Deborah George appeals the civil division's determination that her father, decedent Theodore N. George, was the sole owner of a vehicle at the time of his death and that the vehicle was properly included in his estate. She argues that decedent's act in changing the registration to reflect joint ownership effectively transferred an interest in the vehicle to her. Alternatively, she argues that decedent's act demonstrated his intent to make a gift of joint ownership. We conclude that there is insufficient evidence that decedent transferred an interest in the vehicle to daughter under either theory and affirm.

¶ 2. Decedent purchased the vehicle at issue, a 1979 Cadillac Eldorado, in 1992. The Vermont Department of Motor Vehicles (DMV) issued a Certificate of Title to decedent in 1994. The vehicle was titled in decedent's name only. The copy of the title in the record contains no assignment of ownership to daughter.

¶ 3.     In 2006, decedent submitted to the DMV a Vermont Registration, Tax, and Title Application (2006 Registration Application)[1] for the vehicle.  Decedent's name is listed in the space provided for the owner, and daughter's name is listed in the adjacent space provided for a co-owner.  The same Vernon, Vermont address is listed for both decedent and daughter.  Next to daughter's name, a handwritten annotation says, "add co-owner."  The form directs applicants to select rights of survivorship if more than one owner is listed and provides that "if no box is checked joint tenants will be selected."  Decedent made no indication.  At the bottom of the form, decedent signed the application; the line for the co-owner's signature was left blank.  No bill of sale accompanied the 2006 Registration Application.  The DMV issued registration certificates naming both decedent and daughter for 2012-2013, 2014-2015, and 2017-2018.

¶ 4.     Decedent executed his last will and testament in 2016; Article Third disposes of his vehicles.  The will devised the "1979 White Cadillac" to Christine George, one of decedent's other daughters.  Decedent executed the first codicil to his will in 2017.  The codicil continued to devise the "1979 White Cadillac" to Christine.

¶ 5.     Decedent died in November 2017.  Thereafter, the Probate Division of the Windham Superior Court admitted decedent's will and first codicil.  The executor of decedent's estate later filed an inventory with the probate division.  The inventory listed the 1979 Cadillac Eldorado, among other vehicles.

¶ 6.     Daughter objected to the inclusion of the 1979 Cadillac in the estate's inventory. The probate division held hearings to determine ownership of the vehicle but did not find clear evidence of ownership.  It acknowledged decedent's 2006 Registration Application but noted that it was signed only by decedent, that it was unclear who wrote the notation "add co-owner," and that it lacked an accompanying bill of sale.  It also looked to decedent's attempted disposition of

---

[1] This application is also known as Form VD-119.  For purposes of clarity, we refer to the application form generally as Form VD-119 and refer to decedent's submitted application as the 2006 Registration Application.

2

the vehicle under the will and first codicil, which suggested that "decedent believed he owned the vehicle and was free to bequeath it" because this attempted disposition was part of an estate plan in which decedent devised one vehicle to his partner and to each of his children and grandchildren. Given that plan, and because ownership of the Cadillac was ambiguous, the probate division was "reluctant to defeat his testamentary intent." It found that the vehicle was properly included in the inventory and ordered the executor to transfer it to the named beneficiary, Christine George.

¶ 7. Daughter appealed the probate division's decision to the Civil Division of the Windham Superior Court, which considered the matter de novo. In a decision on the merits, the court affirmed. The court determined that 23 V.S.A. § 2023, which governs vehicle transfers, requires ownership to be transferred through assignment of the title certificate. Although the vehicle was more than fifteen years old and exempt from receiving a new title under 23 V.S.A. § 2012(10), the court reasoned that decedent could still assign the title issued to him in 1994. It found no evidence that decedent executed an assignment and warranty of title to daughter. It also found no evidence of a bill of sale reflecting a transfer of interest. Without such evidence, the court determined that the 2006 Registration Application alone was insufficient to transfer an interest in the vehicle. Accordingly, the court concluded that decedent owned the vehicle outright and the vehicle was properly listed in his estate's inventory.

¶ 8. On appeal, daughter argues that 23 V.S.A. § 2023 grants the DMV Commissioner the authority to prescribe alternate methods of transferring ownership of a vehicle, and the Commissioner designated Form VD-119 as one such method. According to daughter, decedent's 2006 Registration Application thus transferred an interest in the vehicle to daughter, and she owned it jointly with a right of survivorship at the time of his death and now owns it outright. Alternatively, she asserts that even if the statutory requirements for transfer under § 2023 are not met, the 2006 Registration Application provides clear and convincing evidence that decedent intended to transfer ownership to daughter as a co-owner.

3

¶ 9. This appeal asks us to consider whether daughter was a joint owner with a right of survivorship of the vehicle at the time of decedent's death, either because decedent validly transferred an interest in the vehicle to daughter under Vermont's vehicle transfer statute or as an inter vivos gift. We agree with the civil division that decedent's 2006 Registration Application did not comply with the statutory requirements under 23 V.S.A. § 2023 to transfer an interest in the vehicle. We conclude that the record contains insufficient evidence to support a finding that decedent made a valid gift in 2006.[2] We address each issue in turn.

## I. Compliance with 23 V.S.A. § 2023

¶ 10. We first address whether decedent's 2006 Registration Application effectively transferred an interest in the vehicle to daughter under Vermont's vehicle transfer statute. This question concerns the proper interpretation of 23 V.S.A. § 2023(a). We review issues of statutory interpretation de novo. Benson v. MVP Health Plan, Inc., 2009 VT 57, ¶ 4, 186 Vt. 97, 978 A.2d 33. When construing a statute, "[o]ur primary objective is to effectuate the intent of the Legislature." Id. We look first to the plain language of the statute and "presume the Legislature intended the plain, ordinary meaning" of the words used. Id. (quotation omitted).

¶ 11. Section 2023(a) of Title 23 provides: "If an owner transfers his or her interest in a vehicle . . . he or she shall, at the time of delivery of the vehicle, execute an assignment and warranty of title to the transferee in the space provided therefor on the certificate or as the Commissioner prescribes . . . ." Daughter argues that the plain language of this provision permits the DMV Commissioner to prescribe alternate methods by which vehicle owners can transfer ownership. She asserts that the Commissioner has designated Form VD-119 as one such alternative. She points to language on the DMV website explaining that Form VD-119 can be used for "new transactions, transfers, renewals, title-only transactions, adding or deleting an

---

[2] In a motion to reconsider the civil division's order, daughter argued in part that decedent's act in changing the registration demonstrated his intent to transfer partial ownership of the vehicle to daughter. The civil division denied the motion and did not address this issue.

4

owner, lease buyouts, and IRP transactions." See Forms & Manuals, Vt. Dep't of Motor Vehicles, https://dmv.vermont.gov/forms-information [https://perma.cc/USZ6-R2FJ]. She argues that § 2023(a) cannot be used to transfer ownership here because the vehicle is more than fifteen years old and the DMV will not issue a new title. See 23 V.S.A. § 2012(10) (providing that "[n]o certificate of title need be obtained for . . . a vehicle that is more than 15 years old").

¶ 12. As an initial matter, we disagree with daughter's argument that 23 V.S.A. § 2023 cannot be used to transfer ownership when a vehicle is more than fifteen years old and thus exempt from receiving a new title under 23 V.S.A. § 2012. Transfer under § 2023 does not hinge on the issuance of a new title; instead, it requires assignment of the current title. The exemptions listed in § 2012 did not prevent decedent from assigning his interest on his current title.[3]

¶ 13. As to daughter's argument regarding Form VD-119, we agree that the plain language of 23 V.S.A. § 2023(a) empowers the Commissioner to designate alternative methods for transfer of vehicle ownership. However, for the following reasons, we conclude that decedent's 2006 Registration Application did not effectively transfer an interest in the vehicle to daughter.

¶ 14. First, we note that the DMV has not adopted any regulation under a formal rulemaking process providing an alternative method to transfer ownership. See Code of Vt. Rules 14 050, http://lexisnexis.com/hottopics/codeofvtrules (listing rules promulgated by the DMV). However, 23 V.S.A. § 2003(a) gives the Commissioner authority to "prescribe and provide

---

[3] Daughter asserted at oral argument that the title certificate in the record, which lacks any assignment to her, is a copy provided by the DMV because decedent's original title could not be located. She argued that it was possible that decedent assigned his original title and presented it to the DMV. Daughter also asserted that, under a 2016 law, she could have obtained title to the vehicle based on the registrations issued in her and decedent's names. See 2015, No. 50, § 33a (codified at 23 V.S.A. § 2013(a)(2)-(3)) (permitting residents who own untitled vehicles to obtain an exempt title based on certain evidence of ownership, including registration). We do not address either argument because both are speculative and would require us to consider the legal significance of facts not present in the record. See In re Grundstein, 2020 VT 102, ¶ 22, __ Vt. __, __ A.3d __ (holding that no subject matter jurisdiction existed to address an argument that "d[id] not raise an actual controversy, but instead invite[d] this Court to issue an advisory opinion" on the legitimacy of a path that appellant did not take).

suitable forms of applications, certificates of title, notices of security interests, and all other notices and forms necessary to carry out the provisions of this chapter." Accordingly, we look to Form VD-119 to consider whether the Commissioner prescribed it as an alternative to the space provided for assignment on a vehicle title certificate to transfer ownership.

¶ 15. Form VD-119 differs from the space provided for assignment on the title certificate in one critical aspect: it lacks any language of intent to transfer. The form asks for the name, address, date of birth, and driver's license number of the vehicle owner and any co-owner. If there is a co-owner, the form asks the applicant to indicate rights of survivorship. At the bottom of the form, there is a space for the owner and co-owner to sign. By contrast, the space on the title certificate is designated with the following language: "The undersigned hereby certifies that the vehicle described in this title was transferred to . . . ." The certificate then asks for the name and address of the transferee, the date of sale, and the current odometer reading. Finally, it asks for the signature and printed name of both buyer and seller. These indicia of transfer are absent from Form VD-119.

¶ 16. We look next to the published instructions from the DMV regarding Form VD-119. The instructions list the supporting documents required for a Vermont registration and title. For used, titled vehicles, the instructions require an applicant to submit the "[o]riginal previous certificate of title assigned to [the applicant] by all parties on the title and bills of sale as necessary to show complete chain of ownership." Form VD-119i, Vermont Registration, Tax & Title Application Instructions, Vt. Dep't of Motor Vehicles, https://dmv.vermont.gov/sites/dmv/files/documents/VD-119i-Registration_Tax_Title_Instructions_0.pdf [https://perma.cc/RE44-TASD]. For used, untitled vehicles, the instructions require a bill of sale containing "sufficient information to identify the vehicle including, Make, Year, VIN, Purchase Price, Mileage, Signature of Seller and Date of Sale." Id. Because a bill of sale provides evidence of intent to transfer ownership, it follows that the DMV requires owners to submit this evidence with Form VD-119 to demonstrate new ownership.

6

¶ 17.    Thus, Form VD-119 on its own does not purport to serve as a legal mechanism for the transfer of ownership, either on its face or pursuant to the DMV instructions.  Instead, the form and its instructions explain that it is meant to serve as the next step after transfer, rather than an alternative to transfer.[4]  This conclusion accords with the DMV's description of the form on its website.  The website provides that Form VD-119 is used "to apply for registration and titling (when applicable)."  Forms & Manuals, Vt. Dep't of Motor Vehicles, supra, ¶ 11.  Once a seller has transferred ownership to a buyer, the buyer then submits Form VD-119, along with any necessary supporting documents, to apply for registration and titling.  The DMV provides a new title "when applicable," because Vermont law does not require every vehicle to receive a new title after transfer.  See 23 V.S.A. § 2012 (providing exemptions to title requirement).  This conclusion also accords with the statutory requirements for vehicle registration, which explain that evidence of ownership must accompany the registration application.  See id. § 303(a).  Daughter's argument that the registration application establishes ownership is inconsistent with this provision.

¶ 18.    The record shows that decedent failed to assign an interest in the vehicle to daughter in the space provided on the title certificate.  Additionally, there is no evidence of a bill of sale

---

[4]  Daughter argues that Form VD-119 is equivalent to forms for the transfer of untitled vehicles promulgated by New Hampshire and Connecticut, which have vehicle-transfer statutes that are similar to Vermont's.  See Conn. Gen. Stat. § 14-166(b) (exempting vehicles older than twenty years from title requirement); id. § 14-179(a) (requiring owner to transfer interest in vehicle by assigning title certificate "or as the commissioner prescribes"); N.H. Rev. Stat. Ann. § 261:3 (exempting vehicles with model year before 2000 from title requirement); id. § 261:14 (requiring owner to transfer interest in vehicle by assigning title certificate "or as the director prescribes").  She argues that both states provide methods for owners of an untitled vehicle to transfer ownership without issuing a new title.  We find this argument unavailing.  New Hampshire provides a separate form for the transfer of untitled vehicles, which Vermont does not.  See Report of Sale or Transfer of a Non-Titled Motor Vehicle, N.H. Dep't of Safety, https://www.nh.gov/safety/divisions/dmv/forms/documents/tdmv22a.pdf [https://perma.cc/N9ED-HR6Q].  Connecticut requires a Supplemental Assignment of Ownership form or a bill of sale.  See Proof of Ownership Documents, Ct. Dep't of Motor Vehicles, https://portal.ct.gov/DMV/CIVLS---Modernization/Registration-CIVLS/Proof-Of-Ownership-Documents [https://perma.cc/9VUD-A8AN].  In both states, it appears that a registration application, without more, would not suffice to transfer ownership of an untitled vehicle.  And in any event, decedent's vehicle here had a title.

recording decedent's transfer of an interest in the vehicle to daughter.[5]  Accordingly, we conclude that decedent's 2006 Registration Application did not transfer an interest in the vehicle to daughter under 23 V.S.A. § 2023(a).

## II.  Inter Vivos Gift

¶ 19.    Decedent's failure to comply with the title-transfer statute, however, does not end our analysis.  The statute lays out the requirements for state recognition and registration of a vehicle but does not resolve the issue of whether there was a valid gift made between decedent and daughter.  See 23 V.S.A. § 2023(d) (providing that compliance with the statute is necessary to make a transfer "except . . . as between the parties"); see also Mendenhall v. Mountain W. Farm Bureau Mut. Ins. Co., 2012 WY 46, ¶¶ 11-13, 274 P.3d 407 (concluding that failure to transfer title certificate does not preclude inter vivos gift and collecting cases from other jurisdictions).

¶ 20.    We faced a similar issue in In re Estate of Adams, which involved a probate dispute over the ownership of certain bank accounts.  155 Vt. 517, 587 A.2d 598 (1990).  In that case, the trial court found that the accounts were joint accounts and ordered the executor to remove them from the decedent's estate.  This Court determined that the accounts did not meet the statutory requirements to establish a joint bank account.  Id. at 520, 587 A.2d at 960.  Nevertheless, we explained that the accounts were properly excluded from the estate "if [decedent] established the elements of valid inter vivos gifts with respect to the accounts" by clear and convincing evidence. Id.

¶ 21.  We  conclude  that  a  similar  principle  applies  here:  despite  decedent's noncompliance with 23 V.S.A. § 2023, the vehicle may be excluded from the estate if there was clear and convincing evidence of a valid gift between decedent and daughter.  The civil division did not address this issue.  To the extent that the probate division considered this issue, it conflated

_____

[5]  Daughter argues that no bill of sale was generated because she did not purchase an interest in the vehicle.  Even if the interest in a vehicle was a gift, however, the DMV instructions to Form VD-119 require a bill of sale to show a record of transfer, regardless of the purchase price. See supra, ¶ 16.

decedent's testamentary intent in 2016 with his donative intent in 2006 and improperly focused on his testamentary wishes as expressed in his will and subsequent codicil. This was error because, if decedent made an effective gift to daughter in 2006, his remaining interest in the vehicle passed to daughter upon his death, and decedent's will and first codicil could not have disposed of property that he did not own at death. See Brousseau v. Brousseau, 2007 VT 77, ¶ 8 n.1, 182 Vt. 533, 927 A.2d 773 (explaining that joint tenancy with right of survivorship "results in the automatic transfer of property upon death by operation of law" to the surviving tenant); Methodist Church of Sandgate v. First Nat'l Bank of N. Bennington, 125 Vt. 124, 128, 211 A.2d 168, 171 (1965) ("An estate in joint tenancy is one held by two or more persons jointly, with equal rights to share in its enjoyment during their lives, and having as its distinguishing feature the right of survivorship."). Thus, we must consider whether there exists sufficient evidence for the civil division to have found that decedent completed an inter vivos gift of an interest in the vehicle to daughter in 2006.

¶ 22. An inter vivos gift requires two essential elements: donative intent and delivery. Brousseau, 2007 VT 77, ¶ 6; see also Estate of Adams, 155 Vt. at 520, 587 A.2d at 960 (providing that to prove gift of joint ownership, donee must show that donor had "a manifest intention to create a present interest in [the donee] during the joint lives of [donor and donee] and an unconditional delivery or divestiture of the [gift] transferred" (quotation omitted)). The third element, acceptance of the gift, is presumed if the first two elements are established. Tucker v. Colburn, 140 Vt. 186, 189, 436 A.2d 1095, 1097 (1981), overruled on other grounds by Estate of Adams, 155 Vt. at 521 n.1, 587 A.2d at 961 n.1. The existence of these elements is a factual question. See Brousseau, 2007 VT 77, ¶ 6. Daughter bears the burden of proving each element by clear and convincing evidence. Little v. Little, 124 Vt. 178, 185, 200 A.2d 276, 282 (1964).

¶ 23. As to intent, we generally presume that "the act of titling property in another's name establishes intent to convey a present interest in the property." Brousseau, 2007 VT 77, ¶ 12. But when, as here, the donor does not transfer title of the property to donee, the donee must demonstrate

clear and convincing evidence of the donor's intent to transfer a present interest in the property. See Estate of Adams, 155 Vt. at 521, 587 A.2d at 961.

¶ 24. The record here contains some evidence of decedent's donative intent. Decedent submitted the 2006 Registration Application to the DMV, which named daughter as co-owner of the vehicle and included the notation "add co-owner." Decedent signed the application. This act tends to show that decedent intended to transfer an interest to daughter. See id. (applying presumption that "one intends the natural consequences of one's acts"). Further, the DMV issued multiple registration certificates for the vehicle which named both decedent and daughter, and there is no evidence that decedent ever objected to these certificates. Even if this evidence is sufficient to establish donative intent, however, daughter has failed to satisfy the element of delivery.

¶ 25. Our prior cases have required delivery that gives the donee "complete possession and control" of the property to complete an inter vivos gift. Tyree v. Ortiz, 127 Vt. 177, 184, 243 A.2d 774, 778 (1968) (quotation omitted). Daughter argues that delivery is immaterial here because decedent sought to convey only a partial interest in the vehicle to daughter. We disagree. Other courts require a donee asserting joint ownership to demonstrate possession or control consistent with joint ownership. See In re Estate of Young, 391 A.2d 1037, 1040 (Pa. 1978) (requiring for joint tenancy delivery that "invest[s] in the donee so much dominion and control . . . as is consonant with joint ownership or interest therein" (quotation omitted)). Moreover, we have only concluded that delivery is irrelevant in the context of bank accounts, where the delivery element bears little relation to the nature of the property. See Estate of Adams, 155 Vt. at 520-21, 687 A.2d at 960-61 (holding that Court need only find that decedent intended to make gift because "stringent application of gift theory elements ignores the reality of modern practice relating to joint . . . bank accounts" (alterations omitted)). That analysis is inapposite when the property at issue is tangible, like the vehicle in this case.

10

¶ 26. We need not decide what level of possession or control is necessary to complete a gift of joint ownership of tangible property, however, because the record here does not show that daughter exerted any possession or control over the vehicle at all. The 2006 Registration Application listed daughter's address as decedent's home in Vernon, Vermont, but daughter did not reside there in 2006 or any year thereafter. There is no indication that daughter ever used or possessed the vehicle, or took any actions consistent with ownership like maintaining or insuring the vehicle. Additionally, there is no evidence that decedent took any action that might constitute symbolic or constructive delivery, such as giving daughter a set of keys. See Restatement (Third) of Prop.: Wills & Other Donative Transfers § 6.2 cmt. g (2003) (explaining that constructive and symbolic delivery can serve as substitute for physical delivery). As such, daughter failed to provide clear and convincing evidence that decedent gifted her an interest in the vehicle in 2006.

¶ 27. In sum, decedent failed to transfer an interest in the vehicle to daughter under 23 V.S.A. § 2023, and daughter failed to prove by clear and convincing evidence that decedent gave her an interest in the vehicle as an inter vivos gift. Accordingly, decedent was the sole owner of the vehicle at the time of his death, and the vehicle was properly included in his estate's inventory.

Affirmed.

FOR THE COURT:

_____
Chief Justice

11