743 So.2d 161 (1999)
John BIONDO, Appellant,
v.
Althea A. POWERS, et al., Appellee.
No. 98-3286.
District Court of Appeal of Florida, Fourth District.
October 20, 1999.
*162 George P. Ord of George P. Ord, P.A., Palm Beach, for appellant.
Steven Goldberg and Randy Ellison, West Palm Beach, for appellee Althea A. Powers.
POLEN, J.
John Biondo timely appeals from a final judgment which ordered partition and sale of the property he jointly owned with Althea Powers. The final judgment distributed the sale proceeds between the parties in proportion to the amount of their court-determined investments. Of the five points he raises on appeal, we reverse only on one. We hold that the trial court erred in misallocating the proceeds of the partition sale.

Facts
This appeal stems from what turned out to be an acrimonious relationship between Biondo and Powers. While the two were dating, they purchased real property in Palm Beach for roughly $650,000. The record reflects that the parties, when they purchased the property, intended to quickly sell it for profit.
Of the total purchase amount, they paid $350,000 via a purchase money mortgage held by the seller. The approximately $268,500+ which was due at closing was paid by both parties in equal proportions (50%/50%).
The deed given by the seller at closing named only Biondo as the grantee. At closing, however, Biondo executed a handwritten note which stated,
Rec'd this 18th day of Dec. 1990 $134,296.28 from Althea A. Powers toward purchase of 224 Barton. Any and all monies received from sale of said property to be divided equally prorated as to invested amounts paid at closing this day.
Powers also signed this note.
Powers subsequently paid off the balance due on the mortgage. It is undisputed that the monies she laid out for expenses associated with the property, including taxes and insurance, exceeded those paid by Biondo. On the same day Powers paid off the mortgage, Biondo executed a quit-claim deed of the property to himself and Powers as joint tenants with rights of survivorship. The deed was later recorded.
After Powers consulted with an attorney, both parties decided to execute and record a quitclaim deed from Biondo and Powers, as joint tenants with rights of survivorship, to Biondo and Powers, as tenants in common.
*163 Powers, through her attorney, then prepared a note running from Biondo to Powers in the amount of $350,000 bearing interest at 6.5% per annum, payable in five years or on prior sale of the property. She also prepared a mortgage on Biondo's interest in the property from Biondo to Powers to secure payment of the note. Biondo executed both documents. Subsequently, Powers made additional payments for various expenses associated with the property.
In July, 1997, Powers sued Biondo, among other things, to foreclose on the note and mortgage and to partition the property. She claimed Biondo owed her $491,575 under the mortgage. She claimed special equity in the property based on certain judgments, taxes, and insurance she paid, as well as repairs that she made, on same.
Biondo filed a counterclaim in which he alleged that the $350,000 amount of the note and mortgage given to Powers was a mistake. He alleged that half of this amount represented her share of the obligations on the property. He requested reformation of the mortgage deed and promissory note.
Thereafter, Biondo was granted leave to amend his answer to raise an affirmative defense of usury to the foreclosure action. In response, the court granted Powers leave to amend her complaint to read, in pertinent part,
Notwithstanding that both the Promissory Note and the Mortgage ... are stated to be in the amount of ... ($350,000), the Plaintiff alleges that such amount was written in the documents as the result of an error or mistake not intended by the Plaintiff, and that the principal amount that should have been stated in the Note is ... ($175,000), together with interest and other charges as set forth in said Note and this Amended Complaint.[1]
Biondo, in turn, alleged as affirmative defenses usury and insufficient consideration for the note and mortgage, and sought to cancel same as criminally usurious. He also sought partition of the property.
Following trial, the court entered final judgment. It determined that Powers' investment in the subject property totaled $760,000+. It determined this amount consisted of her initial investment of the property [her $134,000+ in closing costs plus $14,000+ in interest payments she made to the seller]; $350,000 representing the principal balance of the note and mortgage; interest on the $350,000 amount; credits for one-half of her payments of real estate taxes and insurance; credit for one-half of her payment of the judgment against Biondo in the separate brokerage lawsuit; and her attorney's and expert witness fees and costs. It determined Biondo's investment in the property to be $134,000+, which consisted of only his closing costs.
The court then ordered partition of the property by sale. It ordered the distribution of the sales proceeds in proportion to the amount of the parties' respective investments: 85% to Powers and 15% to Biondo. The final judgment did not address the foreclosure claim, and required Biondo to bear his own fees and costs.

Merits
Biondo claims that the court relied on an improper method to allocate the proceeds of the partition sale. He maintains that because he and Powers each had a 50% interest in the property, the sales proceeds should have been divided equally between them pursuant to section 64.071(1), Florida Statutes (1997). This section provides that, upon a partition sale, the proceeds from such sale shall be divided among the parties in proportion to their interests. § 64.071(1), Florida Statutes (1997). Interpreting this statute, Biondo *164 argues that the judgment should have provided that each party should first receive 50% of the sales proceeds, and Biondo should pay Powers 50% of the excess expenses. Under this theory, he asserts that Powers should have received only $626,075.58 ($760,000 [Power's total investment] $134,000 [Biondo's total investment] = $626,000), with the balance divided equally.
He gives a hypothetical to illustrate his theory: Assuming the property sells for $1 million, he and Powers should receive $500,000 each. He would then reimburse Powers 50% of the $626,000+, or $313,000. Subtracting the $313,000 from his share of the proceeds, he would end up receiving $187,000 while she would end up with $813,000. However, as the final judgment now stands, Biondo would receive 15% of the proceeds, or $150,000, while Powers would receive 85% of the proceeds, or $850,000.
As a general rule, cotenants have a mutual obligation to pay charges upon the co-owned property.[2]Singer v. Singer, 342 So.2d 861 (Fla. 1st DCA 1977); Rankin v. Rankin, 268 So.2d 573 (Fla. 3d DCA 1972). Thus, they are each ultimately liable for his or her proportionate share of the obligations or expenses of the property, consisting of mortgage payments, insurance, taxes, and necessary repairs. Kelly v. Kelly, 583 So.2d 667 (Fla.1991); Potter v. Garrett, 52 So.2d 115 (Fla.1951); Fischer v. Fischer, 503 So.2d 399 (Fla. 3d DCA 1987); Whiteley v. Whiteley, 329 So.2d 352, 353 (Fla. 4th DCA 1976). The equity of one of the parties should not be increased by expenditures made by another. Singer, supra; Waskin v. Waskin, 346 So.2d 1060 (Fla. 3d DCA 1977). Thus, upon partition, a cotenant paying obligations of the property is entitled to a credit from the proceeds of the sale for the other cotenant's proportionate share of those expenses. Goolsby v. Wiley, 547 So.2d 227 (Fla. 4th DCA 1989); Gerver v. Stein, 490 So.2d 1331 (Fla. 3d DCA 1986).
Based on these principles, we hold that Biondo is correct. The evidence was unrefuted at trial that Powers possessed no more than a 50% interest in the property. While she made excess payments for his benefit toward obligations on the property, these payments did not increase her equity in the property; they only entitled her to contribution from Biondo for his proportionate share owed.
Powers, instead, contends that the parties' handwritten note executed at closing controls the allocation of the proceeds. While acknowledging that the document recognizes the parties' equal investments in the property at that time, she argues its language regarding proration contemplated the disproportion which could arise in the future. As such, she concludes that the court's allocating 85% of the proceeds to her is supported by the evidence.
However, her testimony at trial belies this argument. She testified that if the property were sold for $1 million, "[w]e would both get our monies back that we put into it, and then the profit of the house we would divide 50/50." This testimony exactly supports Biondo's theory: if each got back exactly what each put into the house [a total of $894,000+], the roughly $105,000 profit would be split 50/50 between them. In sum, because the evidence appears to support only Biondo's theory, we hold that the court improperly allocated the sales proceeds.
Nevertheless, we affirm on all of the other points raised. The record reflects that the court properly credited Biondo with his initial contributions to the property and followed appropriate procedures in connection with its award of attorney's fees pursuant to section 64.081, Florida Statutes (1997). It also supports the finding that the note was not criminally usurious as Biondo failed to offer any evidence *165 to show that Powers possessed corrupt intent in drafting same.
AFFIRMED in part; REVERSED in part and REMANDED for a reallocation of the proceeds of the partition sale among the parties in accordance with this opinion.
SHAHOOD, J., and GLICKSTEIN, HUGH S., Senior Judge, concur.
NOTES
[1] Despite these pleadings, Powers maintained during trial that there was no such mistake in the original amount.
[2] The exception to this rule is where one cotenant has sole possession of property and is receiving all the profits therefrom. Bailey v. Parker, 492 So.2d 1175 (Fla. 1st DCA 1986).