**In re Jarett R. LEZDEY, Debtor.**

**Allan Wachter, M.D., et al., Plaintiffs,**

**v.**

**Jarett R. Lezdey, et al., Defendants.**

**Bankruptcy No. 8:05–bk–8711–KRM.**
**Adversary No. 8:06–ap–0552–KRM.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

June 8, 2007.

Edwin G. Rice, Glenn Rasmussen Fogarty & Hooker PA, Tampa, FL, for Plaintiffs.

Michael C. Markham, Johnson Pope Bokor Ruppel & Burns LLP, Clearwater, FL, for Defendants.

## ORDER DENYING WACHTER'S MOTION FOR SUMMARY JUDGMENT

K. RODNEY MAY, Bankruptcy Judge.

This adversary proceeding came before the Court on May 1, 2007, on the Motion for Summary Judgment (Doc. No. 13) filed by Allan Wachter, M.D., individually and on behalf of his marital community, Seth Chemicals, Inc., and Nathan M. Technologies Limited Partnership ("Wachter"), and on the Debtor's Response (Document No. 17).

The debtor and his brother, Darren, live in separate residences on Marcdale Boulevard in Indian Rocks Beach.[1] In June 2002, Wachter recorded a $17.9 million Arizona state court judgment against the Lezdeys in Pinellas County. When Wachter's lien was recorded, record title in Jarett's homestead was solely his name. Later, in February 2004, there was recorded in Pinellas County, a Quitclaim Deed

---

1. Darren claims the townhouse at 148 Marcdale Boulevard as his homestead; Jarett resides in the townhouse at 140 Marcdale Boulevard and claims it as his homestead.

dated December 20, 2000, from Jarett Lezdey to himself and to his brother, Darren Lezdey. Wachter has moved for summary judgment asserting that the 2002 judgment attaches to the non-resident brother's (Darren) undivided *one-half* interest in the property. Darren disputes that he has any beneficial interest in Jarett's homestead.

The court has considered the papers filed, the undisputed facts, the cases cited, and argument by counsel. For the reasons stated below, the court concludes that summary judgment is denied.

## UNDISPUTED FACTS

1. The debtor, Jarett Lezdey, obtained his interest in 140 Marcdale by a Warranty Deed, dated December 20, 2000, from James W. Whicker and Barbara R. Whicker. The deed was recorded in the public records of Pinellas County, Florida, on December 26, 2000.[2]

2. On February 22, 2002, Wachter obtained a final judgment in the total amount of $17,869,949, plus interest (the "Judgment"), against the debtor, and Darren Lezdey, and certain others.[3]

3. The Judgment was domesticated in Florida and recorded in Pinellas County on June 13, 2002.

4. When Wachter's Judgment was recorded, record title to 140 Marcdale was in Jarett's name alone. On February 10, 2004, a Quitclaim Deed, dated December 20, 2000, was recorded, purporting to convey 140 Marcdale from Jarett to himself and to his brother, Darren. No right of survivorship is mentioned.[4]

5. The Court has previously ruled that Wachter's lien is not subject to being avoided as to the non-resident brother's interest as of the date the lien was recorded, June 13, 2002. The Court has not yet determined the extent of each non-resident brother's interest in the two Marcdale properties.

## DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Bankr.P. 7056.

The moving party bears the initial burden to show that there are no genuine issues of material fact. *Official Comm. of Unsecured Creditors v. Lerner (In re Diagnostic Instrument Group, Inc.)*, 283 B.R. 87, 93 (Bankr.M.D.Fla.2002). Once the moving party has met that burden, the burden shifts to the nonmoving party to demonstrate that there is a *material* issue of fact that precludes summary judgment. *Id.* At that point, the non-moving party must articulate *specific* facts that establish an issue for trial. *Id.* In addition, the non-moving party must establish a viable legal theory to prevail even if it can prove its version of the facts at trial. *Id.*

For summary judgment, the non-moving party is given the benefit of the doubt on credibility issues and all justifiable inferences are to be drawn in favor of the non-

2. A copy of the Warranty Deed is attached as Exhibit "B" to Wachter's Motion for Summary Judgment.

3. *Wachter v. Lezdey, et al.*, Case No. 99–09334, in the Superior Court for Maricopa County, Arizona. The Judgment awarded compensatory damages in the amount of $11,629,966, punitive damages in the amount of $5,814,983, and attorneys' fees in the amount of $425,000.

4. A copy of the Quitclaim Deed is attached as Exhibit "C" to Wachter's Motion for Summary Judgment.

moving party. *Id.* at 94. The factual conflicts relied on by the non-moving party must be both genuine and material. *Id.* *(citing Mulvihill v. Top–Flite Golf Co.,* 335 F.3d 15, 19 (1st Cir.2003)). A properly supported summary judgment motion will not be defeated by merely colorable evidence that is not significantly probative. *Dalton v. FMA Enterprises, Inc.,* 953 F.Supp. 1525, 1528 (M.D.Fla.1997).

### B. *Language in Recorded Deed Not Conclusive*

█ A judgment lien in Florida is only effective as to the beneficial interest of the judgment debtor. *Miller v. Berry,* 78 Fla. 98, 82 So. 764 (Fla.1919). In this case, the "judgment debtor" is the debtor's brother, Darren. The Court has previously determined that Wachter holds a judgment lien on Darren's nonexempt beneficial interest, if any, in 140 Marcdale because it is not his homestead.

Wachter argues, solely on the basis of the state of record title, specifically the language of the Quitclaim Deed conveying 140 Marcdale to Jarett Lezdey and Darren Lezdey, that Darren held an undivided *one-half* beneficial interest in the property when Wachter's lien was recorded. Wachter further argues that the court must strictly interpret the parties' interests based on the face of the deed as it appears in the record, without consideration of evidence or testimony as to the intent of the parties as to their respective ownership interests. Wachter asserts that any evidence contrary to what appears on the face of the deed is barred by the state recording statutes.

The debtor argues that Darren never held a beneficial interest in 140 Marcdale; his name appears on the original deed only for "estate planning" purposes. The debtor further argues that when one party provides the purchase price to jointly titled property—in this case, Jarett as to 140 Marcdale—there arises the presumption of a resulting trust: any interest that the non-paying, non-resident brother (Darren) holds is for the benefit of the payor-resident brother (Jarett).

In support of his argument, and in opposition to summary judgment, both the debtor and Darren filed Declarations stating: (1) Jarett provided the entire purchase price for 140 Marcdale; (2) the brothers understood that Jarett was the sole owner of 140 Marcdale; (3) Darren never held a right to sell, transfer, or mortgage the property; and (4) the debtor never intended to make a gift of the property to Darren.

█ As a threshold matter, a close examination of the record reveals that on the date the Judgment was recorded, June 13, 2002, Jarett Lezdey was the sole owner of record to 140 Marcdale. Although the Quitclaim Deed conveying the property from Jarett Lezdey to Jarett Lezdey and Darren Lezdey bears the date of December 20, 2000, it was not ***recorded*** until February 10, 2004; nearly a year and a half after Wachter's Judgment was recorded. Therefore, Wachter cannot rely on record title to establish Darren's interest in 140 Marcdale. At best, Wachter would need to present evidence that, pursuant to the unrecorded Quitclaim Deed, the parties intended Darren to own an undivided one-half interest in 140 Marcdale. For this reason alone, summary judgment must be denied.

█ The Court is also unpersuaded by Wachter's argument that language in a recorded deed conveying ownership to two parties *ipso facto* constitutes an undivided *one-half* beneficial interest in each, without regard to what the parties actually intended. None of the cases cited by Wachter establish the legal proposition that the

court is barred from considering evidence regarding the parties' intent as to their beneficial interests in a property titled in both names.

Wachter cites numerous cases in support of his position. Some of them involve former spouses who originally held title to real property as a tenancy by the entireties, which became a tenancy in common upon dissolution of the marriage. See e.g., *Mendelson v. Great Western Bank*, 712 So.2d 1194 (Fla. 2d DCA 1998), *Tullis v. Tullis*, 342 So.2d 88 (Fla. 1st DCA 1977); see also *Hamilton v. Hughes*, 737 So.2d 1248 (Fla. 5th DCA 1999)(where tenancy by the entireties was dissolved upon ex-husband's purported mortgage of entire property creating property held as tenants in common).

Other cases cited by Wachter involve tenants in common who received an interest in the subject property by way of inheritance. See e.g., *Schroeder v. Lawhon*, 922 So.2d 285 (Fla. 2d DCA 2006). Still others involve real property purchased by both persons jointly as tenants in common. See e.g., *Merrill Lynch v. George*, 516 So.2d 1068 (Fla. 4th DCA 1987); *Kern v. Weber*, 155 So.2d 619 (Fla. 3rd DCA 1963). In such cases, it is not surprising that the courts found each party held an undivided *one-half* interest in the subject property, since the original conveyance of the property evidenced an intent for equal ownership.

More instructive is the case of *O'Donnell v. Marks*, 823 So.2d 197 (Fla. 4th DCA 2002). Appellant O'Donnell had petitioned the trial court to sell certain real property held as tenants in common with Marks, and to divide the proceeds pursuant to Chapter 64, *Florida Statutes*. *Id.* at 198. Although, title to the property was recorded as O'Donnell and Marks jointly, with right of survivorship, Marks had paid the entire purchase price and all of the costs and expenses for improvements, repairs, insurance, and taxes. *Id.* Nevertheless, the trial court found that O'Donnell and Marks each owned a *one-half* interest in the property, notwithstanding Mark's financial contributions. *Id.* This was based on the presumption of a gift from Marks to O'Donnell according to the factors set forth in the Restatement (Second) of Trusts Sections 440 and 441 (1959):

> "[w]here a transfer of property is made to one person and the purchase price is paid by another a resulting trust arises in favor of the person by whom the purchase price is paid." However, "[a] resulting trust does not arise where a transfer of property is made to one person and the purchase price is paid by another, if the person by whom the purchase price is paid *manifests an intention* that no resulting trust should arise."

Comment e to this section provides: the fact that the payor takes title to property in the name of himself and another jointly is an *indication of an intention of the payor* to make a beneficial gift of an undivided interest in the property to the other person; and *in the absence of evidence of a different intention of the payor*, the other person does not hold his interest upon a resulting trust for the payor. This is true whether the transfer was made to the payor and the other person as joint tenants or as tenants in common. (Emphasis added).

*Id.* at 197–198.

On review, the appellate court did not upset the trial court's finding with respect to the parties' beneficial ownership interests, but reversed and remanded to determine the proper allocation of the partition sale proceeds, following a two-step procedure as set forth in *Biondo v. Powers*, 743 So.2d 161 (Fla. 4th DCA 1999)(the first

step is to determine each party's percentage ownership of the property; the next step is to determine the reimbursable expenses incurred and to calculate each parties' proportionate share). *Id.* at 199.

What *O'Donnell* reveals is that Florida law recognizes that there may be circumstances in which the beneficial interests of record co-tenants may be fractional shares other than 50%–50%, and in such circumstances the court must consider evidence to determine each party's percentage ownership of the property.

■ Although there is a presumption of beneficial ownership when a person's name appears on title to property, that presumption is rebuttable. See *Moore v. Moore,* 401 So.2d 841, 843 (Fla. 5th DCA 1981)(to overcome presumption that gift was intended by joint title, person challenging effect of deed must come forward with sufficient evidence or testimony to the contrary).

There is another line of cases in which evidence has been considered to rebut the form of a deed, where the facts support the application of a resulting trust. *Grapes v. Mitchell,* 159 So.2d 465 (Fla. 1963)(a resulting trust may be established by parol evidence and is not in contravention to the statute of frauds); *In re Moodie,* 362 B.R. 554, 2007 WL 738435 (Bankr.S.D.Fla.2007)(resulting trust found in favor of co-tenant mother where unrebutted testimony established that mother placed daughter's name on deed for estate planning purposes, paid all consideration for property, and did not intend conveyance as gift to daughter); *In re Griffin,* 123 B.R. 933 (Bankr.S.D.Fla.1991)(no resulting trust imposed in favor of complaining co-tenant that paid all consideration for the property, where other cotenant executed mortgage).

There are still other examples where courts have found no beneficial ownership

in an owner of record. In *Craft v. Craft,* 74 Fla. 262, 76 So. 772 (1917), the Florida Supreme Court looked beyond the granting language of the deed to the intent of the parties in determining the beneficial ownership of certain real property. *Id. Craft* involved the conveyance of real property to a family member, without consideration, for the sole purpose of facilitating the sale of the property. *Id.* at 264, 76 So. 772. In determining ownership, the Supreme Court concluded:

> [w]here one conveys real property to another, without consideration, the object being to promptly consummate a sale of such property by the grantee, it being expressly agreed that upon making sale of the property he will remit the purchase money received therefor to the grantor, a trust in the property is created, and the grantee holds only the bare legal title, the grantor being the beneficial owner of such property.

*Id.* at 262, 76 So. 772. The 1917 *Craft* decision has been followed in recent years by two District Courts of Appeal. *Mayer v. Cianciolo,* 463 So.2d 1219 (Fla. 3rd DCA 1985); *Johnson v. Johnson,* 349 So.2d 698 (Fla. 4th DCA 1977).

In *Mayer,* a mother and son held title to real property as joint tenants with rights of survivorship. *Mayer,* 463 So.2d at 1220. Her son subsequently quitclaimed his interest to his mother to facilitate the sale of the property. *Id.* at 1221. But, the mother died before the sale occurred, and her will conveyed *one-half* of the property to a religious organization. *Id.* The trial court made a factual finding that the quitclaim deed was not intended to vest all of the son's beneficial interest in his mother as sole owner, but was rather done as a matter of convenience to facilitate the sale of the property by his mother. *Id.* The trial court, however, did not impose a construc-

tive trust in favor of the son, because the evidence was insufficient to indicate a fraud or other abuse of confidence had occurred. *Id.* On appeal, the Third DCA reversed, finding that a constructive trust was appropriate:

> where one person having legal and equitable title in property transfers it to another with whom he has a confidential relationship to hold for a particular purpose, a constructive trust arises in favor of the promisee ...

*Id.* at 1222.

Finally, in *Miller v. Berry*, 78 Fla. 98, 82 So. 764 (Fla.1919), a property owner, Berry, conveyed certain real property by warranty deed to a friend, Miller, for the purpose of protecting the property from "domestic troubles." *Id.* At 99. When Miller's judgment creditors began to execute against the property, Berry sought to enjoin their sale of the property. *Id.* In analyzing the issue, the Supreme Court stated:

> Unless it can be said that the land actually became the property of Miller, or that the title was allowed to appear in him of record under such circumstances as to estop complainant from asserting title against Miller's judgment creditors, they have no rights in the premises. As to the first alternative, it is conceded that Miller never owned the property, nor had any beneficial interest whatever therein and the law makes a judgment lien effective only as to the actual beneficial interest of the judgment debtor. (Citations omitted). As to the second alternative, it seems clear that no estoppel operates to preclude complainant from showing the true facts. All the judgments against Miller existed before he acquired the deed in question. Credit was not extended, nor any judgment recovered upon the faith of the record title in Miller. In fact the posi-

tion of the judgment creditors has been in no way affected by the transaction in question.

> To be sure, the record of the deed may have given them hope of satisfying their judgments, and the discovery of the fact that the deed vested no beneficial interest in the grantee may have dissipated their hopes, but hope and disappointment alone do not estop the true owner of property from claiming his own. No substantial right was acquired on the faith of or by reason of the record showing an interest in the judgment debtor; hence no estoppel arises, and in the absence of estoppel the registry statute does not operate to convey title in or to create a lien upon property. (Citations omitted).

*Id.* at 99–100, 82 So. 764.

In *Miller*, the trial court looked beyond the ownership interest in the property as it appeared in the record, and considered evidence as to the true beneficial owner of the subject property. *Id.* The Supreme Court reached its conclusion, notwithstanding the interests of judgment creditors, because those creditors had not relied on the transferee's record title. *Id.*

### CONCLUSION

In sum, the record reflects that on the date of recordation, June 13, 2002, record title to 140 Marcdale was solely in the name of Jarett Lezdey, who claimed the property as his homestead. Wachter cannot rely on record title to establish Darren's interest in 140 Marcdale. For this reason alone, summary judgment must be denied.

Further, Florida law recognizes circumstances, like a gift or resulting trust, where an owner of record may be shown *not* to have any beneficial interest in the property. Where a conveyance to

two or more persons fails to designate each party's fractional interest, there is a presumption of equal ownership, but that is rebuttable by evidence to the contrary. It would be inappropriate to preempt a trial to determine the debtor's intent as to the nature and extent of his brother's interest in 140 Marcdale. Accordingly, it is

**ORDERED** that Wachter's motion for summary judgment is hereby denied.

**DONE AND ORDERED.**