2009 VT 70

## Daniel M. Massey v. Lucille R. Jacko Hrostek

[980 A.2d 768]

No. 07-437

Present: Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.

Opinion Filed July 2, 2009

214

*Matthew T. Birmingham* of *Birmingham & Moore, P.C.*, Ludlow, and *Neal D. Ferenc* (On the Brief), Moretown, for Plaintiff-Appellee.

*Frederick M. Glover* of *Nitka & Glover, P.C.*, Ludlow, for Defendant-Appellant.

¶ 1. **Reiber, C.J.** This appeal arises from a partition action brought by plaintiff Daniel Massey against defendant Lucille Hrostek. In that action, Hrostek was ordered to sign over title to their jointly owned $450,000 vacation home on nineteen acres of land without receiving any compensation from Massey. We reverse and remand.

■ ¶ 2. When Massey brought this partition action, the parties were the titular owners, as joint tenants with rights of survivorship, of a house and land in Cavendish.[1] The parties were for some time involved in a romantic relationship, but were estranged before Massey filed the partition action. The pertinent facts are largely undisputed, and may be briefly recounted.

¶ 3. In November 1996, the parties took title in fee simple absolute to the Cavendish house by warranty deed. Both parties were named in the deed. Massey, however, paid the entire $270,000 purchase price for the property. There was no mortgage. The deed was duly recorded in the town land records, and both parties were named as insureds on the homeowners' insurance policy. There are no deed conditions that compromise or prematurely terminate Hrostek's interest in the property, and the parties had no written agreement, apart from the deed itself, concerning their respective ownership interests in the property. Massey, in addition to paying the entire purchase price, has since paid every expense associated with the property, including all taxes, insurance, utilities, and necessary maintenance costs. He did not demand contribution from Hrostek for these expenses.

¶ 4. From November 1996 until their breakup in November 2003, Hrostek had full access to the property, and the parties

---

[1] Massey subsequently quitclaimed his interest to a trustee who reconveyed it to him, severing the joint tenancy and converting it to a tenancy in common. The severance is not material to our decision today because it did not affect the size of the parties' respective shares in the property, and did not prevent the court from entertaining the partition action. See 12 V.S.A. § 5161 ("A person having or holding real estate with others, as joint tenants, tenants in common or coparceners, may have partition thereof.").

used the property together as a vacation home. After the breakup, however, Hrostek was denied access: Massey changed the locks and alarm codes in November 2003. Massey has had exclusive possession of the property ever since.

¶ 5. In January 2004, Massey filed this action to partition the Cavendish property, pursuant to chapter 179 of Title 12. See 12 V.S.A. §§ 5161-5188. Hrostek filed a counterclaim in March 2005 alleging that Massey had denied her access to the property and requesting injunctive relief, compensatory and punitive damages, costs, and attorney's fees. The parties stipulated that they were joint owners of the property, and in July 2005 the court appointed commissioners to make "findings regarding the valuation and partitioning of the property." See 12 V.S.A. § 5169 (when the court finds that the parties both have ownership interests in the property, "the court shall render judgment that partition be made and appoint three disinterested residents of the county as commissioners"). The commissioners issued their report in August 2006. The commissioners found — as the parties had stipulated — that the property could not be physically divided. Specifically, the commissioners found that "the property cannot be physically subdivided between the parties in an equitable manner so that each party would receive equal value." The commissioners further found that the value of the property, according to an independent appraiser, was $450,000, and that the parties did not dispute this value.

¶ 6. Hrostek contended at trial that she was entitled to $225,000, half of the present value of the property, because Massey had made a gift to her of a one-half interest in the property at the time of the original purchase. The gift, Hrostek contended, was binding against Massey both in equity — i.e., in the partition action — and at law. Hrostek argued that the property should either be sold or assigned to Massey: in either event, she stated that she was entitled to $225,000. Massey, by contrast, urged that Hrostek was entitled to nothing and should simply be ordered to transfer her interest in the property to Massey without compensation.

¶ 7. The trial court issued an opinion including findings of fact and conclusions of law in September 2007. The court first recounted the history of the parties' relationship, a story that need not be retold here. Similarly, the court made findings concerning the parties' respective employment histories, which are also not relevant here. The pertinent findings are as follows.

¶ 8. Massey paid the entire purchase price for the property in Cavendish, all of the closing costs, and the property transfer tax. The deed provided that Massey and Hrostek held the property as joint tenants with rights of survivorship. The court also found that "[a]lthough [Massey] was the purchaser, he included [Hrostek] as an owner as a sentimental gesture," and that Massey "did not intend this as an outright gift," but only intended that Hrostek would be provided some measure of security if Massey should die while they were still romantically involved. Massey, the court found, "just assumed that" if the parties broke up, Hrostek "would simply sign over the house to him because he had paid for everything." In seeming contrast, however, the court also found that Massey, because of an earlier contentious divorce, "was extremely conservative with putting names on property" and for this reason never had his primary home in Connecticut titled in Hrostek's name.

¶ 9. Next, the court enumerated thirteen expenses — the amounts of which were stipulated to by the parties — that had been paid solely by Massey from the date of purchase through November 1, 2003. They are:

| | |
|---|---:|
| Purchase Price | $270,000.00 |
| Property Transfer Tax | 3,375.00 |
| Property Taxes | 41,345.44 |
| Central Vermont Public Service | 9,747.36 |
| Parker Oil | 9,236.07 |
| TDS Telephone | 2,688.00 |
| Sanderson Maintenance | 28,930.00 |
| Linda Hastings (house cleaning) | 3,997.50 |
| Homeowner's Insurance | 2,800.00 |
| Direct TV | 9,072.00 |
| Countryside Lock and Alarm | 2,169.72 |
| Pest Control | 3,500.00 |
| Willey Earthmoving Corp. | 23,000.00 |
| Total | $409,861.09 |

The court also found that Massey had spent $80,000 since 2004 — i.e., in the period after Hrostek was denied access to the premises — repainting the interior of the house, renovating the kitchen and master bathroom, and laying hardwood floors. Massey did not seek Hrostek's permission to make these improvements.

¶ 10. The court then noted that there was "no dispute that the parties hold the property at issue as joint owners" and that as a "joint tenant, [Massey] may seek partition." See 12 V.S.A. § 5161. Because, as the commissioners had found, the property could not be physically divided, the court determined that the property should be assigned to Massey. See *id.* § 5174; *Wilk v. Wilk*, 173 Vt. 343, 347, 795 A.2d 1191, 1194 (2002) ("[P]artition in kind is preferable to assignment, and assignment is preferable to sale.").

¶ 11. Having so concluded, the court determined that the case was controlled by our decision in *Begin v. Benoit*, 2006 VT 130, 181 Vt. 553, 915 A.2d 786 (mem.). In particular, the court noted language from *Begin* to the effect that the partition court there "was within its right to consider [a party's] prior financial contributions to the property in an effort to equitably divide the parties' interests." *Id.* ¶ 6. In *Begin*, the parties had each made some contribution to mortgage payments and other expenses, but those contributions were unequal. Further, the parties had intentionally left the plaintiff's name off of the original deed, mortgage, and promissory note on the property due to her poor credit history. Her name was added only after they had been living in the property together, sharing living expenses more or less equally, for several years. We affirmed that part of the trial court's decision in which the court offset the parties' respective undivided one-half interests in the home based on the nature of the debts they had paid off through the mortgages on the property. *Id.* ¶ 9.

¶ 12. Citing *Begin*, the court here concluded that because Hrostek "made no financial contributions," she was "a joint owner in name only" and thus had "no legal entitlement to any portion of the value of the property." The court ordered that Massey was "entitled to partition and . . . to an assignment of the property without having to make any financial payment" to Hrostek. Hrostek appealed, contending for several reasons that she is entitled to one-half of the property's stipulated value of $450,000. We consider her arguments in turn.

I.

¶ 13. The threshold question in this appeal is whether Hrostek received any interest in the property at the time of the purchase in 1996. Hrostek contends that the trial court erred as a matter of law by failing to conclude that she had a one-half interest in

the property that was acquired by gift at the time of the purchase. As is clear from the summary above, the trial court's ultimate decision relies at least in part on its conclusion that Hrostek was entitled to nothing because she did not contribute to the purchase price, and because Massey lacked the requisite donative intent to establish a joint tenancy, notwithstanding the deed itself. This was error.

■ ■ ¶ 14. Our law establishes a rebuttable presumption "that the act of titling property in another's name establishes intent to convey a present interest in the property." *Brousseau v. Brousseau*, 2007 VT 77, ¶ 12, 182 Vt. 533, 927 A.2d 773 (mem.); *Phillips v. Plastridge*, 107 Vt. 267, 269-70, 179 A. 157, 158 (1935) (voluntary act of titling raises inference of donative intent and delivery); *In re Estate of Adams*, 155 Vt. 517, 521, 587 A.2d 958, 961 (1990) (same). Here, the trial court effectively found that Massey had rebutted the presumption by his testimony that he lacked donative intent. Donative intent is "the intent to confer immediate, beneficial ownership in the property at issue." *Brousseau*, 2007 VT 77, ¶ 7. "The presence or absence of donative intent is ultimately an issue to be determined by the trier of fact." *Id.* It is thus an issue that we review under a deferential standard, reversing only for clear error. *Okemo Mountain, Inc. v. Lysobey*, 2005 VT 55, ¶ 8, 178 Vt. 608, 883 A.2d 757 (mem.).

¶ 15. The trial court here did not explicitly acknowledge the standards just cited. It found, however, that Massey included Hrostek on the deed only "as a sentimental gesture" and "did not intend this as an outright gift." Further, the court found that there "was no agreement, written or oral, that [Hrostek] would share in the ownership or equity of the property." The court then found that "[Massey] just assumed that if [the parties separated, Hrostek] would simply sign over the house to him because he had paid for everything." The court concluded that Hrostek was therefore "a joint owner in name only" and had "no legal entitlement to any portion of the value of the property." In seeming contrast to these findings, however, the court also found that Massey, because of an earlier contentious divorce, "was extremely conservative with putting names on property" and for this reason never had the parties' primary home in Connecticut titled in Hrostek's name. See *Hrostek v. Massey*, No. CV030407894S, 2007 WL 1677009, at *4 (Conn. Super. Ct. May 25, 2007) (noting that the evidence strongly suggested that Massey

made a conscious decision to keep title to his Connecticut properties in his name alone).

¶ 16. These findings are insufficient to rebut the presumption that the joint title established Massey's intent to convey a present interest in the property to Hrostek. The findings' insufficiency is illustrated by their internal inconsistencies. The finding that Massey did not intend to give Hrostek "an outright gift" of any interest in the property is contrary to the finding that he intentionally placed her name on the deed and the finding that he was cautious in titling property jointly. Similarly, it is impossible to reconcile the finding that Massey simply assumed that Hrostek would sign over the property upon their estrangement with the finding that he was "extremely conservative with putting names on property," or with the finding that he intentionally did *not* put Hrostek's name on any Connecticut deeds. Indeed, Massey's supposed assumption that Hrostek would simply sign over her interest upon the parties' estrangement must necessarily have been predicated on Massey's belief that Hrostek had an interest to sign over. Further, the finding that Massey and Hrostek were joint owners — a finding that was a necessary precondition for Massey to bring this action in the first instance, see 12 V.S.A. § 5161 — is irreconcilable with the finding that Massey did not intend to give Hrostek "an outright gift." And, finally, the court found that Massey had a will that named Hrostek as a beneficiary with respect to property other than the house, and that he canceled that will upon their breakup. This cannot be reconciled with the court's finding that, as to the house, Massey intended to accomplish by mere silence what he had taken pains to accomplish with full written formalities as to other property.

¶ 17. Thus, although Massey furnished all of the consideration for the property, the evidence presented does not support the finding — implicit in the trial court's order — that Massey rebutted the joint-title gift presumption. See, e.g., *Jezo v. Jezo*, 129 N.W.2d 195, 197 (Wis. 1964) ("Even where one of the parties furnished all the consideration, a gift might likewise have been intended of the one-half."). Having concluded that the presumption was not rebutted, we must determine what Hrostek's interest was. Under our law, the answer is clear: 27 V.S.A. § 2(b) establishes a statutory presumption that joint tenants will share equally.

(1) An instrument may create a joint tenancy in which the interests of the joint tenants are equal or unequal.

(2) Unless the instrument creating a joint tenancy contains language indicating a contrary intent:

(A) It shall be presumed that the joint tenants' interests are equal.

(B) Upon the death of a joint tenant, the deceased joint tenant's interest shall be allocated among the surviving joint tenants, as joint tenants, in proportion to their respective joint interests at the time of the deceased joint tenant's death.

As noted above, the court's finding that Massey intended to convey *nothing* was unsupported by the record, and was therefore insufficient to rebut the presumption established by the statute just quoted. Thus, Hrostek and Massey, upon the 1996 purchase of the property, each had an undivided one-half interest in the property.[2] To hold otherwise would allow the consideration of contributions preceding the joint tenancy to effectively defeat joint ownership, *Boulette*, 627 A.2d at 1018, an outcome that can hardly be deemed equitable.

¶ 18. It would, of course, have posed no great difficulty for Massey to achieve by legal means the result he now seeks to achieve in equity. He might have drafted the deed to reflect that the parties had unequal ownership interests, see *British Am. Oil Producing Co. v. Grizzaffi*, 135 So. 2d 559, 565 (La. Ct. App. 1961) (noting that language employed in deed established that parties had unequal interests), or, even simpler, he might not have named Hrostek at all, as he did with his Connecticut properties. Had he chosen the latter course, he could still have effectuated his stated intent by naming her as a beneficiary in his will, which he was free to — and did — revoke upon their breakup.

---

[2] See also *In re Lower*, 311 B.R. 888, 893 (Bankr. D. Colo. 2004) (under Colorado law, presumption is that cotenants share equally); *D.M. v. D.A.*, 885 P.2d 94, 96 (Alaska 1994) (where statute establishes no presumption, cotenants are nonetheless presumed to share equally when their deed is silent); *Boulette v. Boulette*, 627 A.2d 1017, 1018 (Me. 1993) (where defendant deeded property to herself and plaintiff as joint tenants, parties held undivided one-half interests); *Hoover v. Haller*, 21 N.W.2d 450, 454-55 (Neb. 1946) (where instrument is silent, rebuttable presumption arises that cotenants share equally); *Everly v. Schoemer*, 80 S.E.2d 334, 337 (W. Va. 1954) (same).

¶ 19. As a final matter, we note that this case is not like *Stephan v. Lynch,* in which the putative donee was aware that the supposed donor lacked donative intent, and the donee allegedly "took advantage of [his mother's] generosity in purchasing a home with her own assets and putting it in their joint names, by driving her out of it and taking possession of the premises." 136 Vt. 226, 227, 388 A.2d 376, 377 (1978). No allegations of inequitable or deceptive behavior by Hrostek appear in the record. Our review of the record leaves us with the definite and firm conviction that the trial court erred in concluding that Massey intended no gift. Cf. *Grice v. Vt. Elec. Power Co.,* 2008 VT 64, ¶ 26, 184 Vt. 132, 956 A.2d 561 (noting that this Court will find clear error in a factual finding when, upon review of the entire record, we have the " 'definite and firm conviction' " that an error has been committed (quoting *In re Vt. Elec. Power Co.,* 131 Vt. 427, 432, 306 A.2d 687, 690 (1973)).

¶ 20. Thus, the parties had undivided one-half interests in the property, and the petition for partition was properly brought. We turn next to a review of the trial court's partition of the equity in the property.

II.

¶ 21. We begin by recounting the principles governing the allocation of property in partition proceedings. Several are relevant here, and we take some pains to enunciate their details, having not had cause to do so in our prior partition cases. As a preliminary matter, the goal of partition actions is "that a cotenant must equally share both the burdens of land ownership (i.e., the responsibility of preserving the land) as well as the benefits." *Parker v. Lambert,* 206 S.W.3d 1, 5 (Tenn. Ct. App. 2006). Thus, if "one cotenant bears a disproportionate share of the burden, the other cotenants must provide compensation," and "if one cotenant enjoys a disproportionate share of the benefits, the other cotenants must be compensated" to achieve partition's equitable goals. *Id.*; see also *Blonquist v. Frandsen,* 694 P.2d 595, 596 (Utah 1984) ("The fundamental objective in a partition action is to divide the property so as to be fair and equitable and confer no unfair advantage on any of the cotenants."). In a partition action, the court "should consider all relevant circumstances to ensure that complete justice is done." *Begin,* 2006 VT 130, ¶ 6 (quotations omitted).

■ ■ ¶ 22. First, under most circumstances, a cotenant who pays necessary maintenance costs associated with jointly owned property is entitled to a setoff for the other tenant's portion of those costs in a partition action, the theory being that it would be inequitable for the noncontributing cotenant to benefit from those outlays. See, e.g., *Palanza v. Lufkin*, 2002 ME 143, ¶ 11, 804 A.2d 1141; *Biondo v. Powers*, 743 So. 2d 161, 164 (Fla. Dist. Ct. App. 1999); see also J. Dawson, *The Self-serving Intermeddler*, 87 Harv. L. Rev. 1409, 1422-24 (1974). Equity thus encourages cotenants to maintain property, discourages the waste that would result from a lack of maintenance, and fully compensates the responsible cotenant for necessary expenditures. With this principle in mind, it is clear that the trial court erred as a matter of law in calculating Massey's credit. In particular, Massey should have received *no* credit for the cost of telephone service *or* the cost of television, as those costs were not necessary to maintain the property. Further findings are required to determine whether the lock and alarm costs were necessary and thus compensable in the partition action. If those costs were incurred in order to oust Hrostek, they are plainly not to be credited to Massey. The costs for which it was proper to credit him, on this record, appear to be property taxes, necessary utilities, house cleaning, insurance, maintenance, and pest control. See *Palanza*, 2002 ME 143, ¶ 11; *Biondo*, 743 So. 2d at 164; *Reitmeier v. Kalinoski*, 631 F. Supp. 565, 582 (D.N.J. 1986) (holding, under New Jersey law, that municipal utility costs are compensable). On remand, the trial court may require additional factual development to determine which costs were necessary and which were not.

■ ■ ¶ 23. A cotenant who pays for discretionary improvements to the property — as distinct from the just-mentioned necessary maintenance costs — is entitled to a setoff only for the resultant increase in fair market value, *not* for the actual costs. *Palanza*, 2002 ME 143, ¶ 11; *Hernandez v. Hernandez*, 645 So. 2d 171, 175 (Fla. Dist. Ct. App. 1994). This difference arises from the unnecessary — even if desirable — nature of improvements. The improving tenant could choose, without detriment to the property, not to undertake discretionary improvements. And the connection of the cost of such improvements to fair market value may vary widely. As the Iowa Supreme Court aptly stated in 1947: "The improvement must not be a foolish or an improvident one, or merely to meet the whim or caprice of the improver. The right to

compensation and the extent of the allowance are determined by the resulting increase and enhancement in the value of the property," not the cost of the improvement. *Indra v. Wiggins*, 28 N.W.2d 485, 489 (Iowa 1947). Some courts have recognized an exception to this rule, allowing credit for the costs of improvements when the noncontributing cotenant expressly consented to the improvement. See, e.g., *Shotwell v. Shotwell*, 119 S.E.2d 251, 255 (Va. 1961). Here, there was no showing that Hrostek consented to the construction of the hiking trails or the shooting berm for which Massey was credited $23,000, see *supra*, ¶ 9, and thus Massey should be credited only for the increase those improvements caused in fair market value, not for the $23,000 cost. The burden is on Massey to show the amount by which the value of the property was enhanced by these improvements. *Shotwell*, 119 S.E.2d at 255.

¶ 24. The next widely accepted principle relevant to this action is that a cotenant who ousts his cotenant from possession and enjoyment of the property will have his share of the partition proceeds set off by the rental value of the ousted cotenant's interest for the period of the ouster. See *Reitmeier*, 631 F. Supp. at 579-81 (discussing nature of ouster and equitable remedies therefor); *Johnson v. Covington*, 251 S.W. 893, 898 (Tenn. 1923) (one who has excluded his cotenants from the property is accountable for rent to the cotenants regardless of whether any profits were received); *Christen v. Christen*, 38 S.W.3d 488, 492 (Mo. Ct. App. 2001); *Newman v. Chase*, 359 A.2d 474, 481 (N.J. 1976); 7 R. Powell, Powell on Real Property § 50.07[6] (fair rental value of property is chargeable against the cotenant in possession "if the cotenant has excluded the others"). Here, as noted, Massey changed the locks and security codes in early November 2003, and Hrostek has not had access to the property since that date. Thus Hrostek is entitled to a setoff for one-half of the rental value of the property for the period during which she was denied access to the property.

¶ 25. Finally, the cotenant who excludes his cotenants from possession and enjoyment of the jointly owned property is not entitled to credit for costs incurred, for either maintenance *or* improvements, during the period of the ouster. *Rinehart v. Schubel*, 2002 ME 53, ¶ 11, 794 A.2d 73. It appears that the trial court adhered to this principle by generally limiting the total

allowed expenses to the period before November 2003, and in particular not crediting Massey for the $80,000 in renovations he undertook during the ouster.

## III.

¶ 26. We turn now to the applicable setoffs. Because Massey stated at trial that he would take an assignment of the property and compensate Hrostek an equitable sum for her interest in the property, on remand the trial court should calculate Hrostek's interest. As we noted in *Begin*, the trial court should interpret the partition statutes in order "to achieve equity between the parties," 2006 VT 130, ¶ 6, but that discretion does not excuse the court from making the concrete mathematical calculations that are possible under these facts.

¶ 27. Based on the stipulated $450,000 value of the property, Hrostek was entitled, before setoffs, to $225,000 for her one-half interest. Had the parties contributed equally to the upkeep of the property, Hrostek would simply be entitled to that amount upon partition. It is undisputed, however, that Massey paid all of the necessary maintenance and repair expenses, as well as certain pre-ouster improvement costs.

¶ 28. Hrostek's interest must therefore be reduced by an amount equal to one-half of the necessary repair and maintenance costs incurred before the ouster. See, e.g., *Biondo*, 743 So. 2d at 164 ("[A] cotenant paying obligations of the property is entitled to a credit . . . for the other cotenant's proportionate share of those expenses."); *Milian v. De Leon*, 226 Cal. Rptr. 831, 834 (Ct. App. 1986) (same). Hrostek's equity must be further reduced by one-half of the amount by which the construction of the shooting berm and nature trails increased the fair market value of the property, and finally increased by one-half of the fair rental value of the premises during the period of Hrostek's ouster. As noted *supra*, ¶ 22, if the lock and alarm costs were incurred for a necessary purpose — and not merely to oust Hrostek — Massey will be entitled to an additional setoff for those costs.

*Reversed and remanded for proceedings consistent with the views expressed herein.*