Vermont Superior Court
Filed 10/05/23
Essex Unit



VERMONT SUPERIOR COURT
Essex Unit
75 Courthouse Drive
Guildhall VT 05905
802-676-3910
www.vermontjudiciary.org

CIVIL DIVISION
Case No. 22-CV-02321

Jason Waldo v. Kaitlyn Maxwell

## FINDINGS, CONCLUSIONS, AND JUDGMENT

The present dispute arises from two separate claims concerning the partition of real estate and the return of an engagement ring.

Plaintiff Jason Waldo and Defendant Katilyn Maxwell were involved in a romantic relationship for approximately ten years from 2010 until Ms. Maxwell's departure in October 2020. During that time, Mr. Waldo proposed marriage with an engagement ring, which Ms. Maxwell accepted. The couple never consummated this engagement and remained unmarried for the duration of their relationship.

During this period, the couple also purchased a lakefront property with two houses located in the Town of Brighton, Vermont. Mr. Waldo seeks permission to sell this jointly owned property and claims that he is entitled to the bulk of the proceeds based on the fact that he is the only party that ever contributed to the purchase, upkeeping, and improvement of the property.

This matter came before the Court on September 26, 2023 for a bench trial. Plaintiff Jason Waldo appeared at the trial with legal counsel. Defendant Kaitlyn Maxwell did not appear at the hearing. Defendant was notified of the hearing by notice that the Court issued on August 2, 2023. Defendant was also made aware that the Court intended to set this matter for a bench trial at the parties' last pre-trial conference on July 28, 2023. Plaintiff represented that he texted Ms. Maxwell at the start of the trial but received no response. To date, Defendant Maxwell has not filed anything with the Court that would seek to explain or excuse her absence from the trial. Ms. Maxwell has also not submitted any exhibits or testimony in this matter.

Based on the testimony and exhibits submitted at trial, the Court makes the following findings and conclusions for each of Plaintiff's claims.

1. *Engagement Ring*

The evidence shows that Plaintiff gave Defendant an engagement ring as a conditional gift based on the promise of marriage in 2016 when the couple became engaged.  The Court finds that the entire purpose of this ring was a gift given in the promise of marriage.  When that marriage did not occur and the parties broke-up their relationship, the purpose and condition of the gift was thwarted and gives rise to a claim to return the ring.

Courts have long recognized a cause of action to recover gifts made in contemplation of marriage.  While Vermont has abolished causes of action for breach of contract to marry, seduction, and the like. 15 V.S.A. § 1001, the General Assembly has preserved a cause of action "for the recovery of a chattel, the return of money, or the value thereof at the time of the transfer ... where the sole consideration for the transfer of the chattel, money or securities ... was a contemplated marriage." Id. § 1002. In Vermont, as elsewhere, courts have treated this cause of action as a species of enforcement of a conditional gift. See, e.g., *Williamson v. Johnson*, 62 Vt. 378, 384-85 (1890); *Annotation, Rights in Respect of Engagement and Courtship Presents When Marriage Does Not Ensue*, 44 A.L.R.5th 1, § 3; *Comment, "But I Can't Marry You": Who Is Entitled to the Engagement Ring When the Conditional Performance Falls Short of the Altar?*, 17 J. AM. ACAD. MATRIMONIAL LAW. 419, 421-22 (2001); see also *Fullerton v. Amblo*, 2004 WL 5460797 (Dec. 22, 2004) (Norton, J.).

Several courts have upheld a presumption that engagement rings are conditional on the marriage occurring and the donee must return the ring where the parties terminate the engagement. See, e.g., *Fierro v. Hoel*, 465 N.W.2d 669, 671 (Iowa 1990); *Heiman v. Parrish*, 942 P.2d 631, 634 (Kan. 1997).  The special recognition for gifts given in contemplation of marriage have invited criticism in legal academia.  One commentator has noted that the rule does not comport with modern expectations of engagements and is applied in a sexist manner, because the prospective bride cannot typically recover expenses that she incurs in preparing for the wedding as she does not "transfer" these expenses to the prospective groom. See *Note, Rules of Engagement*, 107 Yale L.J. 2583, 2600-14 (1998).

Notwithstanding this criticism, 15 V.S.A. § 1002 remains the law of Vermont, and the case law supporting the return of a conditional gift, such as an engagement ring remains the binding precedent for this Court to apply.

In this case, Plaintiff testified that he purchased the engagement ring for $10,400. Plaintiff also testified that he had the ring appraised shortly after its purchase, and the value had grown to $19,000. Plaintiff did not submit evidence of this appraisal, and the Court does not find it to be a credible value on which to base an award. In light of the facts of their break-up, Plaintiff seeks the return of this gift, which he is entitled to do. 23 WILLISTON ON CONTRACTS § 62:28 (4th ed. 2023 update) ("An engagement ring is a conditional gift presented in contemplation of marriage and if that condition (marriage) is not met, the donor is entitled to the ring.").

Based on this, the Court orders Defendant to return the engagement ring to Defendant within 30 days following service of this decision on Defendant. If the ring is no longer in Defendant's possession, Plaintiff shall be entitled to a monetary judgment in the amount of **$10,400** from Defendant.

2. *Partition of Real Estate at201 and 211 Cottage Road*

In January 2016, Plaintiff and Defendant purchased a lakefront property in Brighton, Vermont with two houses. The buildings on the property, known as 201 and 211 Cottage Road, were seasonal camps, and over the next three years, Plaintiff renovated these camps into full-season houses, installing new retaining walls, building new decks, gutting much of the interior of the buildings, as well as decorating and furnishing them. Although the properties were in the names of both Mr. Waldo and Ms. Maxwell, the credible evidence at trial demonstrated that Mr. Waldo was the sole contributor to the financial costs of the purchase price, the renovations, and the on-going carrying costs. Mr. Waldo testified that any and all sweat equity came solely from him. Ms. Maxwell did not contribute any money or work to the property. Notwithstanding this one-sided contribution, the evidence is that both parties equally enjoyed and used the property up and until the end of their relationship, after which neither used the property extensively. The evidence shows that this property was purchased, maintained, and renovated by Plaintiff for the mutual benefit of both parties as part of their then-romantic relationship, and that the joint title reflected the parties plans to form a long-term relationship and eventually, marriage. The end of this relationship has effectively ended the parties' ability to jointly own the property and has led to the present partition action.

Mr. Waldo seeks the right to sell the property and to recover his investment in the property in the form of the money that he used to purchase the property, to renovate the property, and to carry the property. Only after these expenses and costs are reimbursed, which, in turn, will only be reimbursed

after the mortgage and other outstanding bills associated with the property are paid, does Mr. Waldo believe that Ms. Maxwell should share in any additional equity realized from the sale of the property.

Based on the testimony and evidence, The Court generally agrees with Plaintiff, but it makes the following findings and calculations concerning contributions to the property as follows.

First, the HUD closing statement indicates that Plaintiff contributed $44,556.03 to the closing along with an initial deposit on the property of $5,000, which comes out to a total purchase price contribution of **$49,556.03**.

Second, Plaintiff testified that he has made all mortgage payments up and until July 2023. Given that the purchase occurred in January 2016, the Court finds that mortgage payments would have started in February 2016 and continued each month until June 2023 when Plaintiff admits that he stopped payments for lack of resources. The Court calculates these contributions to be 89 months of payments at a monthly mortgage rate of $1,689.29. This makes Plaintiff's total mortgage payment contribution to be **$150,346.81**. [1]

Third Plaintiff presented evidence and testimony of the following expenses, which Plaintiff has paid to maintain and preserve the property since 2016: (1) electricity for 201 Cottage Road (daily rate of $4.53 x 2815 days) $12,751.95; (2) electricity for 211 Cottage Road (daily rate of $5.29 x 2815 days) $14,891.35; (3) water for 201 and 211 Cottage Road (based on $100 per quarter rate per building for 32 quarters) $6,400; (4) cable for 201 Cottage Road ($160.24 per month for 85 months) $13,620.40; (5) cable for 211 Cottage Road ($195.89 per month for 61 months) $11,949.29;[2] (6) oil for both properties $8,395.78; (7) propane for both properties $9,029.22; (8) trash removal for both properties ($46.84 per month for 92 months) $4,309.28; (9) plowing for both properties ($750 per season for 8 seasons) $6,000; (10) lawn care for both properties ($500 per season for 8 seasons) $4,000; (11) dock services for both properties ($400 per season for 8 seasons) $3,200. These total to **$97,547.27**.

Fourth, Plaintiff presented extensive testimony of the cost of the renovations that he made to the property. *Wynkoop v. Stratthaus*, 2016 VT 5, ¶¶ 28–29 (a co-tenant may be compensated for discretionary improvements made to a property, including actual costs and sweat equity). These

---

[1] Plaintiff testified that these monthly payments included principal, interest, taxes, and insurance.

[2] Plaintiff testified that the cable service was necessary for the property's security system and had to be maintained year-round for both houses.

included the following: (1) general renovation work $57,348.84; (2) Labor costs (Plaintiff plus four hired laborers) $25,000; (3) new foundation $4,500; (4) rock retaining wall $10,000.  These total to **$96,848.84.**  In this case, Plaintiff is entitled to direct compensation because the improvements were done by the agreement and consent of both parties and intended not necessarily to improve the fair market value of the property but to increase the comfort, use, and enjoyment of the property.  The evidence indicates that the work done by Plaintiff will significantly increase the re-sale value, but there was no objection by Defendant or evidence that would suggest that the costs of these improvements exceed the increase in value or that the costs of the improvements, which Plaintiff admits are a partial accounting, are unfair to credit to him.  Taking the circumstances in totality, the Court finds that these amounts are fair to award to Plaintiff for the work and improvements that he made with Defendant's consent, and which have improved the quality, if not the value, of the property.

Looking at the proposed contributions more broadly, the Court finds that these costs are reasonably related to the initial acquisition, the on-going maintenance, and reasonable upgrade of the property.  The Court further finds that Plaintiff bore these costs and expenses alone and received no contributions from Defendant, and he is entitled to compensation for these expenses from any proceeds resulting from the sale of the property.  Against these expenses, the Court must deduct **($19,950)** for the net rental income that Plaintiff exclusively collected for renting the property.  This leads to the following overall calculation $49,556.03 (purchase costs) + $150,346.81 (mortgage payments) + $97,547.27 (maintenance costs) + $96,848.84 (renovation costs) – ($19.950) (net rental income) = **$374,348.95.**  *Begin v. Benoit*, 2006 VT 130, ¶ 6 (noting that partitions are equitable in nature and that the Court "should consider all relevant circumstances to ensure that complete justice is done.") (quoting *Wilk v. Wilk*, 173 Vt. 343, 346 (2002)); *Wynkoop*, 2016 VT 5, ¶ 30 (noting that the Court must concrete mathematical calculations regarding contributions and monetary awards) (citing *Massey v. Hrostek*, 2009 VT 70, ¶ 26).

In addition to this amount, Plaintiff is entitled to $7,000 that he expended to purchase new furniture after Defendant removed all of the furniture from the 201 and 211 Cottage Road properties.  Plaintiff testified, and the Court finds credible, that the furniture was purchased by him and belonged to him.  Defendant removed the furniture in 2020 when she ended the relationship, and Plaintiff purchased lower quality and lower price furniture to replace the missing pieces.  Plaintiff has requested the return of these items, but Defendant has refused.  While Plaintiff would like to sell the furniture with the house, the Court has, after additional deliberation on this question, determined that Plaintiff is entitled to compensation for these items in whole as they represent the reasonable replacement costs

for items that Defendant removed without right or license.  The Court awards the **$7,000** amount outright to Plaintiff.

Under the law of partition, the parties here are entitled to the relief sought.  12 V.S.A. § 5161. The evidence is that the property, despite having two buildings, cannot be subdivided, and neither party seeks to retain the property by purchasing out the other's interest.  In such cases, a sale of the property is appropriate.  12 V.S.A. § 5175.  In this case, the Plaintiff has managed the property for most, if not all, of the parties' ownership.  Plaintiff has an interest in maximizing the value of the property to maximize his recovery.  Plaintiff has proposed a one-year license to list the property with a professional real estate broker for sale.  The Court **Grants** this request and **Grants** Plaintiff's request that he be granted the exclusive right to hire the real estate broker, direct the broker's listing, marketing, and pricing of the property.  Plaintiff shall also have the power to accept or refuse any offer for the property on behalf of the parties.  Defendant shall be entitled to request, and Plaintiff shall share, reasonable periodic updates on the progress of the sale with Defendant.

In accord with 12 V.S.A. § 5177, proceeds from the sale of the property shall be applied as follows: (1) at closing all notes and mortgages, water bills, municipal assessments, outstanding utility bills, and any other invoice associated with the property shall be paid in full. (2) the remainder of the funds shall be deposited in Plaintiff's counsel's client trust account.  (3) Plaintiff shall submit a proposed distribution of these funds to the Court for approval.  Distribution shall consist of the following priorities.  The Parties shall be entitled to recover: (A) any and all money contributed to the purchase of the property; (B) any and all costs incurred by either party in carrying the property between the date of this judgment and closing; (C) any and all money contributed to on-going maintenance of the property from the initial date of purchase, including but not limited to mortgage payments, utilities, heating, and maintenance of the property (minus any net profit realized from the property); (D) any and all contributions made by either party to any renovations and improvements to the property; (E) any unpaid amounts owed to a party in conjunction with this decision (i.e., the value of an unreturned engagement ring or the award for the replacement furniture); and (F) Court costs to Plaintiff.  The decision shall also report on any remaining proceeds after these distributions, which shall be divided equally between the parties.  See *Albanese v. Conduit*, 141 Vt. 651, 654 (1982) (assignment of proceeds rests with the discretion of the trial court based on the parties' evidence).

Following an opportunity for response by Defendant,[3] the Court shall issue a final order approving and ordering the distribution of funds. Plaintiff's counsel shall issue the funds in accord with this final order.

## ORDER

Based on the foregoing, the Court grants Judgment in favor of Plaintiff Jason Waldo against Defendant Kaitlyn Maxwell. It is ORDERED and ADJUDGED that Defendant Maxwell shall return the engagement given to her by Plaintiff Waldo within 30 days following the issuance of this Order. If the ring is not available or returned within this time, Defendant shall be liable to Plaintiff for the value of the ring in the amount of $10,400. Defendant Maxwell shall also re-pay Plaintiff Waldo compensation in the amount of $7,000 for the purchase of replacement furniture that Defendant removed from the property without permission or ownership.

Plaintiff is further authorized and directed to list and sell the property as directed in this Order for a period not to exceed one year. Upon the sale of the property, Plaintiff shall apply the proceeds to any outstanding obligations associated with the property and its sale, including, but not limited to, the note and mortgage, any unpaid utilities and maintenance costs, and any closing costs—such as commissions, legal costs, and other fees. The remaining proceeds shall be deposited in Plaintiff's counsel's client trust account, and Plaintiff shall prepare and submit a proposed distribution order consistent as described above. Within this distribution, Plaintiff is entitled to claim $374,348.95 in contributions made in purchasing, maintaining, and reasonably improving the property from January 2016 through the date of this decision. This amount and the other amounts allowed shall be deducted from any proceeds recovered from the sale of the property.

**So Ordered.**

Electronically signed on 10/1/2023 5:49 PM pursuant to V.R.E.F. 9(d)

Daniel Richardson
Superior Court Judge

---

[3] Such response shall be limited solely to whether the proposed distribution conforms to the findings and conclusions of the Court in this order and whether any post-decision expenses are or are not reasonably related to the property and the sale.