Filed 12/26/25

VERMONT SUPERIOR COURT
Essex Unit
75 Courthouse Drive
Guildhall VT 05905
802-676-3910
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 24-CV-00407

| Edward Caron, Jr. et al v. Edward Caron, Sr. |
| --- |

## FINDINGS, CONCLUSIONS, AND ORDER

This case involves a dispute over a property in Averill owned by defendant Edward Caron, Sr. Plaintiffs Edward Caron Jr. and Lori Caron—defendant's son and daughter-in-law—claim that defendant promised to convey the property to plaintiffs in exchange for plaintiffs completing construction of a residence on the property. Plaintiffs allege that, in reliance on that promise, they expended significant time and resources on the construction, only for defendant to break his promise and ultimately exclude plaintiffs from even being able to visit the property. Plaintiffs have brought claims for detrimental reliance, breach of contract, anticipatory breach of contract, breach of the covenants of good faith and fair dealing, unjust enrichment, trespass to chattels, conversion, and specific performance. In short, plaintiffs request that the court order defendant to convey the property to them or award them damages for the time, materials, and labor that they invested in the property.

Defendant disputes ever having agreed to convey the property to plaintiffs and argues that the work plaintiffs performed on the property was done without his permission and was in any event unsatisfactory. Defendant has counterclaimed for trespass to land, trespass to chattels, conversion, and nuisance. The case came before the court for a bench trial on July 9 and 10, 2025, after which the parties submitted post-hearing memoranda. For the reasons set forth below, the court concludes there was no enforceable agreement to convey the property and that much of plaintiffs' work on the property exceeded the scope of any permission that defendant had provided. The court accordingly will enter judgment for defendant on his trespass counterclaim and otherwise deny the parties' requested relief. The court awards nominal damages to defendant and injunctive relief as set forth below.

### Findings of Fact

#### A. Background

Defendant Ed Caron Sr., who lives in Massachusetts, owns the property located at 436 Cottage Road in Averill, situated on Great Averill Pond, which is the subject of the parties' dispute. Defendant acquired the property approximately 50 years ago from an acquaintance he met while working as a construction superintendent in the Connecticut

1

River valley. Defendant used the property for many years as a camp. He and his family would stay in a camper that he bought and kept on the property.

Defendant was married to Suzanne Hepburn. They are divorced but have remained friendly. They are the parents of Ed Jr. and a daughter Julie. Suzanne acquired a 50% interest in the Averill property from defendant in or about 2007, when Suzanne bought out defendant's business partner, but she sold her interest back to defendant in 2018. Defendant has been the sole owner since that time and has paid all taxes and insurance on the property at all relevant times.

In or about 2007 or 2008, defendant began clearing land at the property to build a cabin. Over the next several years, a foundation was poured and a frame for the cabin was erected from timber that defendant had milled. Ed Jr., Julie, and Julie's husband all helped with the project. The frame was erected in 2012. No further work on the cabin occurred for the next several years. Defendant supervised or approved all the work performed during this period.

Ed Jr. married Lori in 2016. Ed Jr. has adult children from a prior marriage. Plaintiffs live in Massachusetts on a lot that neighbors defendant. Around the time of the marriage, defendant asked Ed. Jr. to help weatherproof the cabin and put up siding, and eventually windows. Defendant initially reimbursed Ed Jr. for materials but the costs of the project soon outpaced defendant's reimbursements. Without any agreement concerning reimbursement or the future of the cabin, plaintiffs continued to visit the property and work on the project, mostly during holiday weekends, over the next several years. Ed Jr.'s full-time job as an operator at an excavation company in Massachusetts required regular overtime and weekend hours and limited plaintiffs' ability drive to Averill at other times.

## B. The alleged Labor Day 2019 agreement

On Labor Day weekend in 2019, plaintiffs had been working on installing the exterior siding but had reached a point where decisions needed to be made about next steps, including whether to build a deck or to use a lift or staging to finish the siding on the higher parts of the cabin exterior. At some point later in the weekend, defendant arrived. One day at dusk, the three went down to the lake to relax. They began discussing the progress of the cabin and the costs required to finish it.

What happened over the course of that approximately 15-minute conversation is the crux of the parties' dispute. Ed. Jr. recalls the conversation as follows:

> [Defendant] had brought up some concerns about my sister [Julie]'s financial status and being able to afford her half of the taxes down the road. And . . . and I had voiced concern that, you know, the money and time that Lori and I are putting into it, and there's no guarantee of what's going to happen to it if my sister can't come up with her half and et cetera. So I said, you know, maybe we shouldn't go any farther, invest anymore. And he's like, no, no. We

2

got to get it done. We got to get it weatherproof. And I was like, do you realize what it's going to take to finish it, you know, wiring and plumbing and kitchen. There's a lot of money involved. And he, at one point, came to, you know, if you guys want to invest your money and your time into it, then I will make sure that the camp is yours.

Tr. 47:23-48:11 (July 9, 2025). Lori similarly testified that, because Julie's ability to contribute financially to the Averill property was uncertain, defendant agreed to "turn the camp over to us if we invested and finished the camp off as a family camp," and that defendant "wanted to make sure it would stay a family camp." *Id.* at 218:18-20.

Plaintiffs contend this conversation amounted to an oral contract under which plaintiffs promised to complete construction on the cabin in exchange for defendant promising to convey the property to plaintiffs. Although plaintiffs claim a binding agreement was struck, they acknowledge many terms were not defined including the scope of the work plaintiffs would perform, the materials they should use, the timeline for any conveyance of the property, and whether or how access to the property would be maintained for other family members. *See, e.g.*, *id.* at 188:9-14 (Ed Jr. agreeing that "there was no real agreement on what we were going to do" and that defendant "just said that the camp was going to be ours" and that "[i]f we wanted, we could continue to work on it"); 192:6-9 (Ed Jr. testifying that "I really didn't have a time frame . . . I just assumed when it was done and enjoyable that he would turn it over.").

Defendant adamantly denies agreeing to convey the property to plaintiffs. He claims that his intention was always to keep the property available for the entire family, especially his grandchildren—both Ed Jr.'s and Julie's children. According to defendant, this wouldn't be possible if the property went to plaintiffs because Ed Jr. "can't get along with nobody in the family," including his own kids "who won't come around him." Tr. 153:1-2, 206:19-21 (July 10, 2025).

### C. Plaintiffs' activities from 2020-2022

Plaintiffs did no significant work on the property in 2019 following the Labor Day conversation with defendant. Beginning in the spring of 2020, plaintiffs started visiting the Averill property nearly every weekend (except during the winter months). Ed Jr. stopped working overtime to accommodate these visits, and plaintiffs spent significant time and resources working on the property. Plaintiffs also frequently brought their boat up from Massachusetts and spent time on the lake during these visits.

On Memorial Day weekend 2020, plaintiffs began building a deck on the property including a wheelchair-accessible ramp for defendant, who is in his eighties and has some mobility limitations. Later that summer, defendant received a complaint from the Town of Averill that defendant did not have a permit for building the deck. Defendant drove up from Massachusetts and discovered that plaintiffs had built the deck and ramp. Defendant was

able to sort things out with the Town but was upset the work had been done without his permission or approval. He did not, however, have complaints about the quality of the construction, and he did not ask plaintiffs to remove the deck.

Plaintiffs also completed the exterior siding during the summer of 2020, and over Labor Day weekend, had a dock and boat lift installed for their boat that they stored in Massachusetts and brought up to Averill when they visited. Defendant does not boat and did not use the dock or lift.

The following year, in May or June 2021, the parties were again all at the property together. The deck and siding had been completed. Plaintiffs presented the deck to defendant as a Father's Day present. At some point during this visit, defendant expressed that he intended his grandchildren to inherit the camp. This statement caused Lori to become very upset. According to defendant, he then told plaintiffs to completely stop any interior work on the property. Plaintiffs dispute they were ever told to stop work.

Over the summer of 2021, plaintiffs finished insulating and wiring the interior of the cabin, and began framing and finishing the interior walls, before closing the property for the winter.

After reopening the property in the spring of 2022, plaintiffs began the interior work in earnest. They finished installing tongue-and-groove siding on the interior walls, framed the rooms, including a bathroom on the main floor off of the living room, and purchased fixtures and appliances for the whole living area. Plaintiffs purchased the interior siding from a lumber yard in Colebrook, New Hampshire. Much of the other materials were bought from Home Depot.

Plaintiffs contend they kept defendant informed of all the work they were performing at the property. The parties regularly dined together at their homes in Massachusetts during this period, sometimes multiple times a week. Although both parties acknowledge having regularly dined together, and that defendant generally knew plaintiffs were spending their weekends at the camp, the court finds defendant credible that plaintiffs never sought or obtained his approval to finish the interior of the cabin.

### D. The Fall 2022 lockout and this lawsuit

At some point during the late summer of 2022, defendant's ex-wife (and Ed Jr.'s mother) Suzanne contacted defendant about visiting the property with Ed Jr.'s son Jonathan and Jonathan's girlfriend, who live in Rhode Island. Defendant called Ed Jr. about the visit to make sure plaintiffs would not be there because Jonathan does not get along with and did not want to see his father.

Ed Jr. called his mother Suzanne a few minutes later in a rage and threatened to have her and Jonathan arrested if they showed up at the Averill property. Ed Jr.'s behavior made Suzanne suspicious so she decided to drive up to the property herself midweek from

4

her home in New Hampshire when she knew nobody would be there. Suzanne had not seen the property for several years and was "blown away" and "shocked" by what she saw, including that the interior of the cabin had been finished and appeared fully furnished. Tr. 265:10-12. She took pictures through the windows and glass doors and then returned home and reported to defendant what she had seen. Defendant was shocked and upset upon seeing the pictures because it was not what he wanted. He was particularly upset that a bathroom had been installed on the main level and plaintiffs had cut through the timbers defendant had milled in order to install the plumbing. Defendant had wanted the bathroom to be installed on the basement level.

Approximately one week later, defendant and Suzanne returned to inspect the property in person. Defendant had always left a key to the cabin in the camper at Averill and did not take his own key. Defendant and Suzanne could not find the key in the camper but did find a key hidden under the deck. It appeared that people had been inside recently, as the siding had recently been stained and was still drying, and there were notes inside thanking workers.

Defendant testified at trial that he disliked and did not approve of essentially the entire interior of the cabin. He wanted to use his own milled lumber for the interior siding so that it would match the ceilings he had previously milled and installed. Defendant also did not like or approve the layout of the rooms, the cabinets, the countertops, any of the appliances and fixtures that plaintiffs installed, or the furniture that plaintiffs purchased. Defendant wanted an authentic "log cabin" look for the property and thought what plaintiffs bought from Home Depot both looked too "fancy" and was "cheap."

During the visit with Suzanne, on or about October 1, 2022, defendant hired a locksmith to change the lock on the exterior door. The record is somewhat unclear on this point, but the court finds based on a preponderance of the evidence that defendant hired the locksmith to change the lock on the exterior door because he was concerned that too many people had access to the cabin. As had always been his practice, defendant did not take the new key with him back to Massachusetts but left it either in the hiding place under the deck or in the camper.

On October 6, 2022, Suzanne and defendant wrote a letter to Ed Jr. Defendant told Suzanne what he wanted to say, although Suzanne put it in her own words. The letter stated:

> Hi Hon
>
> Dad went to Averill yesterday and he is very very <u>upset</u>. You and Lori have done all the building behind his back. You never EVEN told him you were up there EVERY WEEKEND. You had no permission to do any of it. He thought you were still sleeping in the camper.
>
> Dad stopped in Island Pond to talk to his lawyer and showed him pictures of what you have done and to ask advi[c]e.

5

You are as of now Trespassing. You have permission until 10/30/22 to go there and get all of your stuff out. Decorations – Nick Nacks – tools etc.

After that date anything left will be put into storage for you to retrieve.

Dad is having the electricity shut off soon so get the peris[h]ables out first.

He hates that it has come to this.

Back when he told you to stop because you could not let anyone else use the camp you did <u>Not Stop</u> why??

Since then you had the siding sealed plus whatever more? Why??

Dad is the sole owner. He is the only one to decide what is done. He can't understand how you could have done this to him. Leave the keys & your set under the stove.

If after 10/30/22 you are there it will be trespassing and he will go to Guild Hall and press charges. If you threaten Dad or destroy property you will be prosecuted. Sorry.

Defs.' Exh. H. The letter copied defendant's attorneys. Suzanne and defendant then placed the letter in plaintiff's mailbox in Massachusetts. Plaintiffs did not respond to this letter. They do not dispute having received it.

Following this letter, plaintiffs returned to the cabin without telling defendant and had it closed down for the winter. They also made arrangements for some of the interior work to continue. Plaintiffs did not remove their tools or other belongings as requested.

Later in October, defendant and Suzanne returned to the property and were not able to locate any key in the camper or in the hiding place under the deck. They called the locksmith they had previously hired to let them in. Upon entering, they saw that work inside had been continuing. At this point, defendant had the locksmith change the locks again to prevent anyone but himself from being able to enter the property.[1]

Plaintiffs returned to the property the weekend of October 30 to pay the balance for new countertops that they had ordered installed. Plaintiffs were locked out and could not enter the cabin.

Plaintiffs returned home to Massachusetts. Ed Jr. saw defendant the next day and they had a short, heated argument. Plaintiffs made no further attempt to work things out with defendant, and hoped things would just blow over.

In the spring of 2023, Ed Jr. had another conversation with defendant in the driveway in Massachusetts. Defendant remained very angry about the work that plaintiffs had done.

---

[1] In November, defendant had the locksmith come back so that all the doors on the cabin were keyed to the same new key.

In July 2023, Suzanne reached out to Ed Jr. about plaintiffs scheduling a weekend to retrieve their belongings from the Averill property. Plaintiffs did not respond.

Plaintiffs made no further efforts to communicate with defendant or Suzanne and instead filed this lawsuit in February 2024. As amended, plaintiffs' complaint pleads claims for detrimental reliance, breach of contract, anticipatory breach of contract, breach of the covenants of good faith and fair dealing, unjust enrichment, trespass to chattels, conversion, and specific performance. Defendant has counterclaimed for trespass to land, trespass to chattels, conversion, and nuisance.

**Conclusions of Law**

Plaintiffs' amended complaint requests that the court enforce the parties' alleged Labor Day 2019 contract by ordering that defendant convey the Averill property to plaintiffs. In the alternative, plaintiffs seek reimbursement for their labor and expenses. If the court concludes no enforceable contract exists, plaintiffs seek recovery under alternate theories of detrimental reliance or promissory estoppel and unjust enrichment. Finally, plaintiffs seek compensation from defendant under theories of trespass and conversion for their inability to access the tools that plaintiffs left in Averill.

1. **Contract claims**

Plaintiffs have not proven an enforceable contract. As the Vermont Supreme Court has explained:

> An enforceable contract requires a meeting of the minds of the parties: an offer by one of them and an acceptance of such offer by the other. A valid offer is one that is intended to create a legally binding relationship on acceptance. To constitute a meeting of the minds, the acceptance must in every respect meet and correspond with the offer, neither falling short of nor going beyond the terms proposed, but exactly meeting them at all points and, in the absence of such an acceptance, subsequent words or acts of the parties cannot create a contract.

*Sweet v. St. Pierre*, 2018 VT 122, ¶ 12, 209 Vt. 1 (quotations and alterations omitted). Likewise, a "mere agreement to agree at some future time is not enforceable." *Miller v. Flegenheimer*, 2016 VT 125, ¶ 12, 203 Vt. 620 (quotation omitted). In order to avoid trapping parties in contractual obligations they never intended, in disputes over preliminary agreements, courts look to the parties' intent to be bound and the definiteness of the supposed contractual terms. *Id.*, ¶ 13.

The 2019 Labor Day conversation between the parties did not create an enforceable contract. Even accepting plaintiffs' version, the conversation was too vague and indefinite to be enforceable. As noted above, there was no agreement on the scope of work plaintiffs would perform, the materials they would use, what would constitute completion of the work, how plaintiffs were expected to preserve the camp for the greater family including the grandchildren of both Ed Jr. and Julie, or the timeframe contemplated either for

7

completion of the work or conveyance of the property. These terms were essential and "[v]agueness, indefiniteness and uncertainty of expression as to *any*" them is enough "to preclude the creation of an enforceable contract." *See Quenneville v. Buttolph*, 2003 VT 82, ¶ 14, 175 Vt. 444. In the absence of an enforceable contract, plaintiffs' claims for breach of contract, anticipatory breach of contract, and breach of the covenants of good faith and fair dealing fail as a matter of law.[2]

Nor can plaintiffs recover under a theory of detrimental reliance or promissory estoppel. Although such a claim can exist in the absence of an enforceable contract insofar as promissory estoppel does not require an exchange of consideration, it still requires a sufficiently definite promise. *See Pettersen v. Monaghan Safar Ducham PLLC*, 2021 VT 16, ¶ 13, 214 Vt. 269 (promissory estoppel claim requires a promise "of a specific and definite nature" while a "vague assurance" is insufficient). As discussed above, plaintiffs have not proven that defendant ever made an enforceable promise.

### 2. Unjust enrichment

The court thus turns to plaintiffs' claim for unjust enrichment. "Under the doctrine of unjust enrichment, a party who receives a benefit must return the benefit if retention would be inequitable." *Beldock v. VWSD, LLC*, 2023 VT 35, ¶ 68, 307 A.3d 209 (quotation omitted). "To succeed on a claim for unjust enrichment, a plaintiff must prove that (1) a benefit was conferred on defendant; (2) defendant accepted the benefit; and (3) defendant retained the benefit under such circumstances that it would be inequitable for defendant not to compensate plaintiff for its value." *Id.* (quotation omitted). "Unjust enrichment provides relief for a plaintiff when an enforceable contract does not exist but fairness dictates that the plaintiff receive compensation." *Id.*, ¶ 78 (quotation omitted). "Unjust enrichment is present if, in light of the totality of the circumstances, equity and good conscience demand that the benefitted party return that which was given." *McLaren v. Gabel*, 2020 VT 8, ¶ 25, 211 Vt. 591 (quotation omitted). "[W]hether there is unjust enrichment may not be determined from a limited inquiry confined to an isolated transaction. It must be a realistic determination based on a broad view of the human setting involved." *Id.*

Plaintiffs' unjust enrichment claim fails because the deck was built as a gift for defendant; defendant never accepted the benefit of the interior work that plaintiffs performed; and considering the totality of circumstances plaintiffs have not established that defendant was unjustly enriched by the exterior, insulation, and electrical work that plaintiffs performed.

The court concludes that plaintiff built and paid for the deck as a gift for defendant. The deck was built on property defendant owned while he owned it, the ramp on the deck

---

[2] Because the court finds the agreement unenforceable according to its alleged terms, the court does not address defendant's argument that 12 V.S.A. § 181 also precludes enforcement.

was made specifically to accommodate defendant, and the deck was presented to defendant by plaintiffs as a Father's Day present. The court concludes plaintiffs intended the deck to be a gift, and that defendant accepted it as such. *See In re Est. of George*, 2021 VT 12, ¶ 22, 214 Vt. 414 (discussing elements of inter vivos gift). Plaintiffs' construction of the deck thus cannot be included as part of any unjust enrichment claim. *See* Restatement (Third) of Restitution and Unjust Enrichment § 2 ("A valid gift is not a source of unjust enrichment (unlike a gift induced by mistake, fraud, or undue influence)" (citations omitted)).

Moreover, the court concludes that defendant never accepted the benefit of the interior and finishing work that plaintiffs performed. Defendant credibly testified that he did not approve of the interior siding, the layout of the interior rooms especially the bathroom, and the cabinets, fixtures, and appliances that plaintiffs installed. The court further concludes that defendant would not have approved of these additions had he been asked. This conclusion is supported by defendant's testimony, Suzanne's testimony, and the history of defendant's ownership and work on the property, which reflects a desire for control, a rustic aesthetic, and a preference for hand-milled lumber, all of which are at odds with the work plaintiffs performed. Plaintiffs do not seriously claim otherwise, rather they simply argue they had the right to finish the cabin as they saw fit. But as discussed above, plaintiffs had no basis to claim ownership or control of the property, which remained in defendant's sole ownership during all relevant times.

Had the work plaintiffs performed in the summer of 2022 been specifically proposed to defendant in a contract, the court concludes he would have rejected it. Plaintiffs cannot compel defendant to pay for the work now through an unjust enrichment claim. *See Beldock*, 2023 VT 35, ¶ 72 (An unjust enrichment claimant "generally cannot compel the recipient to pay for benefits voluntarily conferred if, had the transaction been proposed as a contract, the recipient would have been able to reject it." (quoting Restatement (Third) of Restitution and Unjust Enrichment § 30)).

The court concludes, however, that defendant did accept and retain the benefit of the other work plaintiff performed through 2021. This includes completing the exterior siding and insulating and wiring the cabin. Any benefit that defendant retains from this work, however, must be considered in the context of the parties' entire relationship during the relevant period, at least insofar as the relationship pertains to the Averill property.[3] *Beldock v. VWSD, LLC*, 2023 VT 35, ¶ 78 (quotation omitted); *McLaren v. Gabel*, 2020 VT 8, ¶ 25. In other words, the benefit to defendant of the exterior siding, wiring, and insulation must be measured against the benefit he conferred to plaintiffs by providing them with unrestricted access to a lakefront property through the summer of 2022, which plaintiffs treated at least in part as a vacation retreat, and the costs and inconvenience to defendant

---

[3] The parties are also engaged in litigation related to their properties in Massachusetts. That dispute is not relevant to the claims in this action.

of having his property transformed against his wishes by the unauthorized interior work that plaintiffs performed. Considering the totality of circumstances, the court concludes the combined benefit to plaintiffs and costs to defendant outweigh any benefit that defendant received from plaintiff's efforts.

Moreover, unjust enrichment is an equitable remedy. As further discussed below, plaintiff's claim is based primarily on losses they incurred by exceeding the scope of their permission to use defendant's property. In other words, they seek damages caused by their own trespass. Equitable recovery for unjust enrichment is not warranted under these circumstances. *See generally* Restatement (Third) Restitution and Unjust Enrichment § 63 ("Recovery in restitution to which an innocent claimant would be entitled may be limited or denied because of the claimant's inequitable conduct in the transaction that is the source of the asserted liability.").

Defendant is entitled to judgment on plaintiffs' unjust enrichment claim.

### 3. Claims related to plaintiffs' tools

Plaintiffs have pled claims for trespass to chattels and conversion related to the tools that were left in Averill, and which plaintiffs claim they have been unable to recover. There appears to be no dispute that plaintiffs are entitled to recover their tools. Nor does the evidence show that defendant ever sought to dispossess plaintiffs and claim the tools as his own. Rather, the evidence shows that plaintiffs never sought to recover their tools between being locked out of Averill in October 2022 and filing this lawsuit. Plaintiffs never responded to defendant's offer—made through Suzanne in the October 6 letter and again the following year—to arrange a time for Ed Jr. to pick up the tools. Defendant testified at trial that he has no desire to retain the tools. Because defendant has not prevented plaintiffs from recovering their tools, plaintiffs' claims for trespass to chattels and conversion fail to support a claim for money damages. *See* Restatement (Second) of Torts § 218 (no liability for trespass to chattels unless trespasser dispossess claimant, impairs the value of the chattel, deprives claimant of use for a substantial period of time, or causes actual harm); *Montgomery v. Devoid*, 2006 VT 127, ¶ 12, 181 Vt. 154 (conversion claimant must show "that another has appropriated the property to that party's own use and beneficial enjoyment, has exercised dominion over it in exclusion and defiance of the owner's right, or has withheld possession from the owner under a claim of title inconsistent with the owner's title.").

The parties shall arrange for plaintiffs to retrieve their tools within thirty days. This time may be extended by agreement of the parties.

### 4. Defendants' counterclaims

Defendant has pled counterclaims against plaintiffs for trespass to land and fixtures, trespass to chattels, conversion, and nuisance.

10

With respect to the trespass claims, the evidence makes clear that defendant gave plaintiffs explicit or implicit permission to visit the property in Averill as much as they wished, and to perform substantial work on the property including installing the exterior siding, insulation, and electrical wiring, as discussed above. Plaintiffs, however, exceeded the scope of defendant's permission by finishing and furnishing the cabin interior pursuant to their tastes without first seeking defendant's authorization. Defendant has thus proven that plaintiffs are liable for trespass. *See, e.g.*, *Buzzell v. Jones*, 151 Vt. 4, 5 (1989) (invitee who exceeds scope of invitation becomes a trespasser).

"The remedy for trespass may include either nominal damages, compensatory damages, or a permanent injunction if damages are inadequate to address the wrong." *Jones v. Hart*, 2021 VT 61, ¶ 59, 215 Vt. 258. Defendant testified that he wants to remove and replace essentially all of plaintiff's interior work including the interior siding, the bathroom, cabinets, fixtures, appliances, and furniture. But he offered no estimate as to what it would cost to have such items removed. Defendant has thus failed to prove any compensatory damages. The court will accordingly award nominal damages on defendants' trespass claim, and order that plaintiffs remove any items or materials from the property that they purchased and wish to retain including the boat lift and dock, the interior siding, the cabinets, and any appliances, fixtures, or furnishings that they purchased. Any items that plaintiffs leave behind will become defendant's property to use or dispose of as he wishes.

Defendant has not proven that plaintiffs are liable on his other counterclaims. The conversion claim fails because plaintiffs never appropriated the Averill property to themselves or excluded defendant from the property in a way that could give rise to a conversion claim. *See Montgomery*, 2006 VT 127, ¶ 12, 181 Vt. 154.[4] Because the court has determined that plaintiffs' conduct amounted to a trespass, the court concludes that defendant's nuisance counterclaim fails to support any additional award of damages. *See Post & Beam Equities Grp., LLC v. Sunne Vill. Dev. Prop. Owners Ass'n*, 2015 VT 60, ¶ 24, 199 Vt. 313 ("A private nuisance is a nontrespassory invasion of another's interest in the private use and enjoyment of land." (quoting Restatement (Second) of Torts § 821D)).

## Order

Judgment is entered for defendant on plaintiffs' claims.

Judgment is entered for defendant on defendant's counterclaims for trespass in a nominal amount of $1. Judgment is entered for plaintiffs on defendant's other counterclaims.

---

[4] To the extent plaintiffs intended to lock defendant out of the property in the fall of 2022, any exclusion of defendant from the property was de minimis, as defendant quickly regained and retained exclusive possession of the property.

Within thirty days, defendants shall allow plaintiffs to retrieve their tools from the Averill property. Within six months, plaintiffs shall remove any items or materials from the property that they purchased and wish to retain. Defendant will give plaintiffs a reasonable opportunity to remove such items. After such opportunity, any items that plaintiffs leave behind will become defendant's property to use or dispose of as he wishes. These timelines may be extended by agreement of the parties.

Electronically signed on: 12/26/2025 pursuant to V.R.E.F. 9(d)

_____
Benjamin D. Battles
Superior Court Judge

Electronically signed on: 12/26/2025 pursuant to V.R.E.F. 9(d)

_____
Hon. Evan Hammond
Assistant Judge

Electronically signed on: 12/26/2025 pursuant to V.R.E.F. 9(d)

_____
Hon. Kenn Stransky
Assistant Judge